LODGED
CLERK, U.S. DISTRICT COURT

AUG 17 2020

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

OCT 21 2020

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | CASE NUMBER |
|---|---|
| HUPP | 5:16-cv-00370-VAP-SP |
| **PLAINTIFF(S)** | |
| v. | |
| SOLERA OAK VALLEY GREENS ASSOCIATION | **NOTICE AND ORDER RE FILING BY VEXATIOUS LITIGANT** |
| **DEFENDANT(S).** | |

On August 17, 2020 _____, the Court received the attached

☒ Complaint ☐ Petition ☐ Notice of Removal, captioned _____

☒ other document(s), entitled Ex parte application, cv cover, certificate and notice, motion to disqualify, request for IFP, etc.,

from Paul Hupp _____, who was found by the Court on 08/16/2016

in case number 5:16-cv-00370-VAP-SP to be a vexatious litigant and/or subject to the following restrictions on the filing of additional documents:

☒ A court order or written authorization from a judge must be obtained prior to the filing of document(s).

☒ Submission of document(s) for filing requires a Motion for Leave to File.

☐ Document(s) must be pre-screened by the Court before filing.

☐ Filing fee must be paid.

☐ No further filings are to be accepted in this case from the person named above or anyone acting on his or her behalf.

☐ Bond in the amount of $ _____ must be posted in order to proceed.

☐ Other : _____

Pursuant to the terms of the order imposing filing restrictions, the attached document(s) will be forwarded to the
☒ assigned magistrate judge ☒ assigned district judge ☒ Chief Judge for review.

☐ IT IS HEREBY ORDERED that the document(s) presented:
  ☐ be filed in the above-captioned case.
  ☐ be filed in case number _____.
  ☐ be filed as a new case.
or
☐ IT IS RECOMMENDED that the document(s) presented not be filed.  The Clerk is directed to forward this
recommendation to the appropriate district judge for review.

_____          _____
Date                                            United States Magistrate Judge

IT IS HEREBY ORDERED that the document(s) presented
  ☒ not be filed.
  ☐ be filed in the above-captioned case.
  ☐ be filed in case number _____
  ☐ be filed as a new case.

10/21/2020                        _____
Date                                            United States District Judge

CV-115 (04/2018)                **NOTICE AND ORDER RE FILING BY VEXATIOUS LITIGANT**

1  Paul Hupp
2  965 Hidden Oaks Drive
   Beaumont, CA. 92223
   *In Propria Persona*
3

4  LODGED
   CLERK, U.S. DISTRICT COURT

5  AUG 1 7 2020

6  CENTRAL DISTRICT OF CALIFORNIA
   EASTERN DIVISION        BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

7

8  Paul Hupp,                              )
                                           )
9          Plaintiff,                      )
                                           )   Case No.: CV-20-
10             v.                          )
                                           )   **PLAINTIFF PAUL HUPP'S**
11  Rebecca Lynn Dugan,                    )   **EMERGENCY *EX PARTE* APPLICATION**
    John Washburne Vineyard,               )   **PURSUANT TO LOCAL RULE 7-19;**
12  Leslie Irene Ryder, A/K/A Leslie Irene Hupp; )  **POINTS AND AUTHORITIES;**
    Lisa Martinez Shiozaki;                )   **DECLARATION IN SUPPORT**
13  Kellen S. Stevens;                     )
    Dennis M. Sandoval;                    )
14  De La Housaye & Associates,  A Law      )   Time: 9:00 AM
    Corporation;                           )   Date: August 19, 2020
15  Roes 1-10;                             )   Courtroom:
    Individually, Jointly, Jointly and Severally, )  Judge:
16              Defendants.                )
                                           )
17                                         )
                                           )

18                              **I**
19                         **Introduction**

20      To the United States District Court for the Central District of California ("COURT"),

21  Defendants Rebecca Lynn Dugan ("DUGAN"), John Washburne Vineyard  ("VINEYARD")

22  Leslie Irene Ryder, A/K/A Leslie Irene Hupp ("RYDER"); Lisa Martinez Shiozaki

23  ("SHIOZAKI"); Kellen S. Stevens ("STEVENS"); Dennis M. Sandoval ("SANDOVAL"); De

24  La Housaye & Associates, A Law Corporation ("DLHA") and Roes 1-10 ("ROES") (collectively

25  "DEFENDANTS") and all other parties of interest, pursuant to Local Rule 7-19, Plaintiff Paul

Hupp ("") HEREBY GIVES Notice of Emergency *Ex Parte* Application and Emergency *Ex Parte* Application to enjoin DEFENDANTS, with specificity on SANDOVAL and RYDER, from taking any further action regarding or concerning the breaching of Fiduciary Duties of Aristea Hupp's ("AHUPP") Trust (TRUST"), based on irreparable harm caused to TRUST by DEFENDANTS. Hearing will be held at 9:00 AM in Dept.:   , at the United States District Court for the Central District of California, Eastern Division, Riverside, CA, 92501[1].

## II
## **Memorandum of Points and Authorities**

This action concerns AHUPP'S TRUST, and the breach of FIDUCIARY DUTY of the *alleged* TRUSTEE and EXECUTOR to do their respective duties. The breaches are causing irreparable harm to TRUST. The number #1 concern currently is the care and well-being the four (4) senior rescue dogs ("SENIOR RESCUE DOGS") of AHUPP which are now in the care of her son, .  took possession of the SENIOR RESCUE DOGS because the TRUST EXECUTOR breached her fiduciary duty to be their "lifetime guardian". *See* 'S "Complaint", "Cause of Action Three": P. 12; ¶¶ 54-57; filed concurrently. One of the SENIOR RESCUE DOGS developed an aggressive cancer and is in need of, and has been in dire need of since July 13, 2020, immediate surgery, costing $785. *See* attached invoice dated July 13, 2020. Because the TRUSTEE and EXECUTOR have breached their FIDUCIARY DUTY to pay TRUST expense, PHUPP has had to borrow well over $2,500 to date, and TRUST expenses are in default of over $5,000 more to date. Neither TRUSTEE nor EXECUTOR have paid a legion of expenses of TRUST since AHUPP passed April 12, 2020, resulting in default  and the potential total loss of

---

[1] As of today the COURT is closed down due to COVID-19 and all parties should expect to participate in the *Ex Parte* Hearing telephonically. Whether appearance is in person or telephonically, the parties will be notified 24 hours in advance by PHUPP on how to appear.

value of TRUST if a fire, or other catastrophic event, were to take place; homeowner insurance is

but one (1) of the legion of expenses that have defaulted.

Currently all three (3) TRUST real properties have homeowner association fees ($203;

$203; $200; $603/month aggregate) that have not been paid in over five (5) months and are in

default. All three (3) have had legal notices sent that liens are about to be placed on the real

properties. One of the real properties has not had the $150/month Trust Deed [mortgage] paid in

over five (5) months and a "Notice of Foreclosure" has been filed by the lender. The TRUST has

had income over this five (5) month period of approximately $4,100, far more than needed to pay

the HOA fees and Trust Deed of all three (3) real properties. The insurance of one real property

has expired, on July 15, 2020. If a fire or any other type of harm were to damage or destroy the

real property there would be a total loss with no recourse.

PHUPP is not in a position to "borrow" any more money to pay TRUST expenses that

have accumulated during the last five (5) months. This includes water bills that had received a 48

hour shutoff notice. Home phone and internet expenses are in default of over $400 for non-

payment, and 'S cellphone was disconnected for non-payment.

The SENIOR RESCUE DOGS are most at risk because their life saving surgery/health

cannot be paid for. The SENIOR RESCUE DOGS monthly food cost was paid by automatic

payment by AHUPP'S credit card, which is now in the possession of TRUSTEE and

EXECUTOR, and has been in default since AHUPP passed April 12, 2020, forcing  to borrow

the costs and expenses to continue to provide for their care.  has been able to barely get by the

last five (5) months by borrowing money from friends and making the minimum payments to

utilities. Such borrowing was o where near the amounts needed to continue basic living expenses

1    and care for AHUPP'S SENIOR RESCUE DOGS.  cellphone was turned off <u>July 13, 2020</u>, due

2    to four (4) months of non-payment.

3        On <u>May 12, 2020</u>,  asked STEVENS and DLHA for an accounting of all expenses

4    incurred by TRUST since AHUPP passed on <u>April 12, 2020</u>. Neither STEVENS, DLHA,

5    SANDOVAL, RYDER, or any DEFENDANT, replied in any manner whatsoever. Under

6    statutory law in CA a TRUSTEE must give an accounting of TRUST assets at least once every

7    year and upon any change in TRUSTEE. When SANDOVAL was allegedly appointed

8    TRUSTEE on or around <u>May 5, 2020</u>,  was entitled to a full accounting of TRUST assets,

9    including all income and expense statements under California Probate Code §17200(a)(7)(B):

10

11        "Except as provided in Section 15800, <u>a trustee or beneficiary of a trust may
           petition the court under this chapter concerning the internal affairs of the trust</u> or
12         to determine the existence of the trust."
                                                    ***
13        "Provide information about the trust under Section 16061 if the trustee has failed
           to provide the requested information <u>within 60 days after the beneficiary's
14         reasonable written request,</u> and the beneficiary has not received the requested
           information from the trustee within the six months preceding the request."
15         Underline added.

16        DEFENDANTS, including the *alleged* appointed TRUSTEE SANDOVAL, have not

17    complied with statutory law as outlined *supra*. DEFENDANTS have allowed virtually all of

18    TRUST accounts and assets to enter into default. This has resulted in completely uncalled for

19    late fees added to all of the accounts; but far more serious it has placed TRUST assets in a

20    position of total loss as insurance has not been paid and lapsed; lien notices have been filed or

21    are in the process of being filed on all three (3) TRUST real properties; a foreclosure notice has

22    been sent by the lender of one (1) real property. The most harmful irreparable harm is the

23    lifesaving cancer surgery for one of AHUPP'S SENIOR RESCUE DOGS has been delayed by

24    more than 30days, placing the SENIOR RESCUE DOG'S entire life in danger.

25

At hearing will move COURT to: 1) enjoin all DEFENDANTS from having any further association with TRUST without prior court approval; 2) release $5,000 from TRUST to so can bring all accounts up to date; 3) ORDER RYDER to give his 50% share of AHUPP'S cremated ashes that RYDER took possession of on May 4, 2020; 4) ORDER RYDER to release two (2) of the three (3) "Death Certificates" RYDER took possession of on May 4, 2020; 5) at hearing ORDER any further relief requested that is reasonable.

### III
### Conclusion

For the reasons set forth *supra* PHUPP prays that the COURT GRANT 'S Emergency *Ex Parte* Application to cure irreparable harm being caused to: 1) TRUST; 2) AHUPP'S SENIOR RESCUE DOGS; and 3) .

### IV
### Declaration

I, **Paul Hupp**, the above-entitled Respondent, declare the following;

1. I have personal knowledge of all statements and exhibits in this declaration.

2. If called upon to testify to this declaration in a court of competent jurisdiction I could and would testify to everything stated herein.

3. All Exhibits attached to or referenced in this brief, are true and correct copies of the originals, which I have in my personal possession. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct except for those portions based on information and belief and for those portions I believe them to be true.

Executed August 10, 2020, Beaumont, CA

Respectfully submitted.

Dated this 10th day of August, 2020

Paul Hupp

/s/ Paul Hupp
Paul Hupp
965 Hidden Oaks Drive
Beaumont, CA. 92223
*In Propria Persona*

# LOMA LINDA ANIMAL HOSPITAL INC.

CHTCO 7-13-2

2605 S. Waterman Ave. • San Bernardino, CA 92408
**(909) 825-3144** • Fax (909) 824-5145
Drs. Office Hours: **Mon-Fri 8-12, 2-6 & Sat 8-2**
Hospital hours: Monday - Saturday **6:30 AM - 7PM  (Sat 6PM)**
Emergencies & Sundays **Call (909) 825-3144**

- **Medical Care**
- **Large Animals by Appointment**
- **Grooming**
- **Boarding**
- **Pet Supplies**

CANCER :C

| | | | T O T A L     D A T E |

## OFFICE CALLS
- [ ] Office Call
- [ ] Office Call Multi-pets
- [ ] Re-check
- [ ] Emergency Office Call
- [ ] Consultation
- [ ] Health Certificate
- [ ] Permit
- [ ] Blood Draw

## INJECTIONS
- [ ] Adequan
- [ ] Allergy
- [ ] Antibiotic    23    (23)
- [ ] Antihistamine
- [ ] Calcium
- [ ] Hormone
- [ ] Ivomectin
- [ ] Vitamin
- [ ] IV  Fluids
- [ ] SQ  Fluids    (34)
- [ ] _____ Rx 23
- [ ] _____
- [ ] _____ T 23

## VACCINATIONS
- [ ] Bordetella
- [ ] Corona
- [ ] DHP/P
- [ ] DHLP/P+C
- [ ] FIP
- [ ] Fe Lv
- [ ] FVRCP
- [ ] Influenza
- [ ] Lyme
- [ ] Parvo
- [ ] Rabies
- [ ] Rattlesnake
- [ ] _____

## WORMING
- [ ] Cats & Dogs up to 10#
- [ ] Dogs 10.1# & up
- [ ] _____

## MEDICATION DISPENSED
( Ant  13 )
( Commect 23 )

## HOSPITALIZATION
- [ ] Intensive Care
- [ ] Isolation Care
- [ ] Nursing Care

## PROFESSIONAL SERVICES
- [ ] Anal Sac Expression
- [ ] Apply Bandage
- [ ] Artificial Insemination
- [ ] Ear Cleaning
- [ ] Enema
- [ ] Eye Dye/Anesthesia
- [ ] Eye Schirmer Tear Test
- [ ] Fine Needle Aspiration
- [ ] Foxtail Removal
- [ ] IV Catheter    35
- [ ] Physiotherapy
- [ ] Ultrasound Exam
- [ ] Urinary Catheter
- [ ] Whelping Assistance
- [ ] _____

## RADIOLOGY
- [ ] Small Film
- [ ] Large Film
- [ ] Barium Series

## ANESTHESIA & SEDATION
- [ ] Isoflurane Inhalant
- [ ] IM Anesthesia
- [ ] IV Anesthesia    (94)
- [ ] Local Anesthesia
- [ ] Torbugesic
- [ ] Tranquilization

## SURGERY
- [ ] Castration
- [ ] Ovariohysterectomy (Spay)
- [ ] _____ mass/30

## DENTISTRY
- [ ] Extractions
- [ ] Ultrasonic Cleaning & Polishing
- [ ] _____

## BOARD CERTIFIED SPECIALISTS
- [ ] Consultation
- [ ] Pathology
- [ ] Radiology
- [ ] Surgery
- [ ] _____

## LABORATORY
- [ ] Avian Profile
- [ ] Biopsy
- [ ] Brucellosis Test
- [ ] CBC
- [ ] Complete Canine Panel    145
- [ ] Complete Feline Panel
- [ ] Culture and Sensitivity
- [ ] Cytology
- [ ] Distemper Titer
- [ ] Fecal Exam
- [ ] Feline Leukemia Test
- [ ] FIV Test
- [ ] Fungal Culture
- [ ] Glucose
- [ ] Heartworm Exam
- [ ] Mammalian Profile
- [ ] Parvo Fecal
- [ ] Parvo Titer
- [ ] Progesterone
- [ ] Rabies Titer
- [ ] Skin Scraping
- [ ] Sperm Count
- [ ] Thyroid Profile
- [ ] Urinalysis
- [ ] Vaginal Smear
- [ ] _____

## PROFESSIONAL GROOMING
- [ ] Bath and Groom
- [ ] Bath Only
- [ ] Medicated Bath
- [ ] Nails

## BOARDING
- [ ] Cats & Rabbits
- [ ] Small Dogs up to 25#
- [ ] Medium Dogs 26-50#
- [ ] Large Dogs 51-75#
- [ ] Extra Large Dogs 76# & up
- [ ] Birds
- [ ] Walk

## MISCELLANEOUS
- [ ] E & C
- [ ] Hazardous Waste
- [ ] Postage & Handling

## HOME CARE

**Next Appointment** _____    **Call for Lab Results** _____ **AM/PM**

**THE CALIFORNIA VETERINARY MEDICINE PRACTICE ACT STATES IN SECTION 2030:** "If no after hours emergency care is available, full disclosure shall be provided to the public to rendering services." Staff members and Dr. Sigdestad regularly check animals after business hours. Dr. Sigdestad lives near the clinic and any pet deemed critical will be transported to his residence.

# Invoice

# Sunstream HOA

9984 Scripps Ranch Blvd, san Diego CA 92131

| Date | To | Ship To |
|------|-----|---------|
| July 1, 2020 | Estate of Arista Hupp | Same as recipient |

## Instructions

We understand the incredible loss you must be experiencing.  Please bring this account up to date so we can avoid legal action to protect the interests of the HOA.

| Quantity | Description | Unit Price | Total |
|----------|-------------|------------|-------|
| | 39th Street HOA – April 1 2020 | 200 | 200 |
| | 39th Street HOA – May 1 2020 | 200 | 400 |
| | 39th Street HOA – June 1 2020 | 200 | 600 |
| | 39th Street HOA – July 1 2020 | 200 | 800 |
| | Late Fees | 45 | 845 |
| | Interest accruing at 6% | | |
| | Will be increased by legal costs if not settled by 7/15 | | |

| | | |
|---|---|---|
| | Subtotal | |
| | Sales Tax | |
| | Shipping & Handling | |
| | **Total Due By 7.7.2020** | **$845** |

Thank you for your business!

Home Loan
Provider of
**Charles Schwab Bank**

1050 Woodward Avenue | Detroit, MI 48226

# See Your Payment Options Online At

## R CKET Mortgage
by Quicken Loans

Aristea Hupp
965 Hidden Oaks Dr
Beaumont, CA 92223

Hi Aristea Hupp,

Your mortgage payment is 39 days or more past due, and your loan is in default. However, we have resources that can help you, whether you've had:

- A financial challenge
- A loss of income
- A serious life event

You don't have to pick up a phone to get a solution.

The easiest way to see your options is to print a mortgage assistance application on <u>Rocket Mortgage</u>®. Once we receive your application by mail, we'll collect all the information needed to accurately understand your current situation and find the best solution for you.

If you have other mortgages secured to this property, consider contacting the mortgagees of those mortgages to discuss loss mitigation options.

Sincerely,

Your Account Resolution Team
AccountResolution@QuickenLoans.com

Sign in to Rocket Mortgage® to find the best option based on your unique situation.

 **Pay Now**     **Start Your Application**     **Chat**     (800) 279-3005

 | Solera Oak Valley Greens Association

June 18, 2020

**Sent Ground & Certified Mail-RRR**

Aristea Hupp
1653 Hibiscus Crt
Beaumont, CA 92223



Re:    **Pre-Lien Notification**
Solera Oak Valley Greens Association
1653 Hibiscus Crt , Beaumont, CA 92223
1257057101

Dear Property Owner(s):

This notice is to advise you that we are attempting to collect a debt of assessments as required by the provisions of the **Fair Debt Collection Practices Act**. As such, any information obtained from you will be used for the purpose of collecting said debt. This notice does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy laws of the United States.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

Please be advised you have the right to dispute the assessment debt by submitting a written request for dispute resolution to the association pursuant to the association's "meet and confer" program as described in Civil Code Section 5900 et. seq., and you have the right to request alternative dispute resolution (ADR) with a neutral third party pursuant to Civil Code Section 5925 et. seq. before the association may initiate foreclosure against your separate interest, except that binding arbitration shall not be available if the association intends to initiate a judicial foreclosure.

*Proudly Managed By*
Keystone Pacific Property Management, LLC

 5 Von Karman #100    30021 Tomas Road #160    41593 Winchester Road #113    3155-D Sedona Court
vine, CA 92606    Rancho Santa Margarita, CA 92688    Temecula, CA 92590    Ontario, CA 91764
(949) 833-2600    (949) 833-2600    (951) 491-6866    (909) 297-2550

soleraovg.com

ra Oak Valley Greens Association

ail-RRR

eens Association
eaumont, CA 92223

at we are attempting to collect a debt of assessments as required by the
**ollection Practices Act**. As such, any information obtained from you will
lecting said debt. This notice does not imply that we are attempting to
ho has discharged the debt under the bankruptcy laws of the United States.

Collection Practices Act and the federal Fair Debt Collection Practices
unusual circumstances, collectors may not contact you before 8 a.m. or
rass you by using threats of violence or arrest or by using obscene
use false or misleading statements or call you at work if they know or
may not receive personal calls at work. For the most part, collectors may
than your attorney or spouse, about your debt. Collectors may contact
ur location or enforce a judgment. For more information about debt
contact the Federal Trade Commission at 1-877-FTC-HELP or

e right to dispute the assessment debt by submitting a written request for
ciation pursuant to the association's "meet and confer" program as
on 5900 et. seq., and you have the right to request alternative dispute
ral third party pursuant to Civil Code Section 5925 et. seq. before the
losure against your separate interest, except that binding arbitration shall
tion intends to initiate a judicial foreclosure.

*Proudly Managed By*
Keystone Pacific Property Management, LLC

Tomas Road #160          41593 Winchester Road #113          3155-D Sedona Court
ta Margarita, CA 92688          Temecula, CA 92590          Ontario, CA 91764
49) 833-2600          (951) 491-6866          (909) 297-2550

soleraovg.com

AMERICAN FAMILY CONNECT INS AGCY
PO BOX 9061
CARLSBAD, CA 92018-9061

**UNIVERSAL NORTH AMERICA INS CO**
**CONDO OWNER POLICY**
**RENEWAL OFFER**

| Policy Number | Term | Policy Premium | Total Fees | Previous Balance | Total Premium | Due Date |
|---|---|---|---|---|---|---|
| CCA1002049 | 07/25/20 to 07/25/21 | 279.00 | 25.00 | .00 | 304.00 | 07/25/20 |

ARISTEA HUPP
965 HIDDEN OAKS DR
BEAUMONT, CA 92223

**Named Insured And Risk Address:**
ARISTEA HUPP
4233 39TH ST APT D
SAN DIEGO, CA 92105

**Mortgagee:**
NONE

**Your Producer:**
AMERICAN FAMILY CONNECT INS AGCY
800-447-1889
Producer Code:   150830

**Loan Nbr:**

**Payment Plans**

**24-Hour Automated Policy Information: (800) 447-1889**
Your CONDO OWNER Policy is issued to cover the insured and location indicated above.  You are shown on
our records as the premium payor.  If payment is not received by 12:01 a.m. on 07/25/20 you will have no
coverage as of this date.  Thank you for choosing UNIVERSAL for your insurance needs.

| **Full Payment** | | *Four Installments | | *Six Installments | |
|---|---|---|---|---|---|
| Amount | Due Date | Amount | Due Date | Amount | Due Date |
| 304.00 | 07/25/20 | 101.75 | 07/25/20 | 73.85 | 07/25/20 |
| | | 76.75 | 09/23/20 | 54.43 | 08/29/20 |
| | | 76.75 | 11/22/20 | 54.43 | 10/13/20 |
| | | 76.75 | 01/21/21 | 54.43 | 11/27/20 |
| | | | | 54.43 | 01/11/21 |
| | | | | 54.43 | 02/25/21 |

Premium includes: Fully Earned $25 policy fee
*A $7 service charge is included in each installment.
Enroll for AUTOMATIC WITHDRAWAL using your checking account or credit card at www.ArrowheadExchange.com          06/08/20
**See reverse side for Coverages, Endorsements, and other details.**

---

**PAYMENT COUPON**
Make checks payable to: ARROWHEAD GENERAL INSURANCE AGENCY

Named Insured    ARISTEA HUPP
Policy Number    CCA1002049

**Select Payment Plan:**
Full Payment                 304.00
*Four Installments         101.75
*Six Installments            73.85
Due Date                      07/25/20

Write your policy number on the check and
return this coupon with your payment or pay
online at www.ArrowheadExchange.com

☐ If Change of Mailing Address is
required, please check box and enter
new information on back of coupon.

**◢◣ ARROWHEAD**
**EXCHANGE**
Pay online TODAY at:
www.ArrowheadExchange.com

**Amount Enclosed**

$

UNIVERSAL NORTH AMERICA INS CO
PROCESSING CENTER
P O BOX 9061
CARLSBAD, CA  92018-9061



02##########CCA10020494000007385007252020CA01624000000000000000000000091220200



Beaumont-Cherry Valley Water District
Cherry Valley Water District
...nolia Avenue
...ont CA 92223
...845-9581
...bcvwd.org

**Beaumont-Cherry Valley Water District**
**560 Magnolia Ave**
**Beaumont, CA 92223**

# Disconnection Notice

BCD0616A
4000000096 96/1



ARISTEA HUPP
1653 HIBISCUS CT
BEAUMONT CA 92223-8604

| RE: | | |
|---|---|---|
| | Account Number | 038902-000 |
| | Account Name | Aristea Hupp |
| | Service Location | 1653 Hibiscus Ct |
| | Past Due Amount | $32.01 |
| | Additional Charge | $0.00 |
| | Amount Due | $32.01 |
| | Due Date | Tuesday, June 23, 2020 |

Dear Customer:                                                                                      06/16/20:

This account has been delinquent for 30 days, as of the date of this notice.  To avoid account inactivation, the $50.00 inactivation charge, and disconnection of service on the sixtieth (60th) day of delinquency, please make your payment of the total Amount Due by 5:00pm on the due date listed above.  Any payment received after 5:00pm will be posted to the following business day.

Payments can be received over the phone, via the District's website, by mail, with the onsite drop box, or in person during office hours.  The District's office hours are Monday through Thursday, 8:00am until 5:00pm.  The District is currently closed on Fridays.  The District is not responsible for lost or damaged mail.  See reverse side for more information on bill payment options.

In accordance with the District's policies and procedures, your account has been charged a $5.00 disconnection notice fee for this correspondence.

Should you have any questions or concerns, please feel free to contact the District at (951) 845-9581.

Sincerely,

Utility Billing

# Payment
# Coupon

## ACCOUNT INFORMATION

PLEASE RETURN THIS PORTION ALONG WITH YOUR PAYMENT
PLEASE MAKE CHECK PAYABLE TO:
**BCVWD**

ACCOUNT:                                    **038902-000**
SERVICE ADDRESS:                      1653 Hibiscus Ct
BILLING DATE:                            06/16/2020

**DUE DATE:**                              **06/23/2020**

ARISTEA HUPP
1653 Hibiscus Ct
Beaumont, CA 92223

## AMOUNT DUE

| PAST DUE AMOUNT | | $32.01 |
|---|---|---|
| LATE CHARGE | | $0.00 |
| **TOTAL AMOUNT DUE BY** | **06/23/2020** | **$32.01** |

## AMOUNT ENCLOSED

|  | REMIT PAYMENT TO: |
|---|---|

BCVWD
PO BOX 2037
BEAUMONT CA 92223-0937



□3Λ9□2□□□□□□□3201□



**Beaumont-Cherry Valley Water District**
**560 Magnolia Ave**
**Beaumont, CA 92223**

6-22-20 WATER

MoneyGram

R

PLEASE READ IMPORTANT NOTICE

KEEP A COPY OF THIS STUB
FOR YOUR RECORDS/
MANTENGA UNA COPIA DE
ESTE RECIBO PARA SUS ARCHIVOS

EMPLOYEE
698 (6/16) 500/5000
M 80338-Z

▼DETACH HERE ▼

**connection Notice**

ARISTEA HUPP
965 HIDDEN OAKS DR
BEAUMONT CA 92223-8527

| | | |
|---|---|---|
| RE: | Account Number | 037172-000 |
| | Account Name | Aristea Hupp |
| | Service Location | 965 Hidden Oaks Dr |
| | Past Due Amount | $28.51 |
| | Additional Charge | $0.00 |
| | Amount Due | $28.51 |
| | Due Date | Tuesday, June 23, 2020 |

Dear Customer:                                                                                     06/16/202_

This account has been delinquent for 30 days, as of the date of this notice.   To avoid account inactivation, the $50.00 inactivation charge, and disconnection of service on the sixtieth (60th) day of delinquency, please make your payment of the total Amount Due by 5:00pm on the due date listed above.  Any payment received after 5:00pm will be posted to the following business day.

Payments can be received over the phone, via the District's website, by mail, with the onsite drop box, or in person during office hours.  The District's office hours are Monday through Thursday, 8:00am until 5:00pm.  The District is currently closed on Fridays.  The District is not responsible for lost or damaged mail.  See reverse side for more information on bill payment options.

In accordance with the District's policies and procedures, your account has been charged a $5.00 disconnection notice fee for this correspondence.

Should you have any questions or concerns, please feel free to contact the District at (951) 845-9581.

Sincerely,

Utility Billing

## Payment
# Coupon

### ACCOUNT INFORMATION

PLEASE RETURN THIS PORTION ALONG WITH YOUR PAYMENT
PLEASE MAKE CHECK PAYABLE TO:
**BCVWD**

| | |
|---|---|
| ACCOUNT: | 037172-000 |
| SERVICE ADDRESS: | 965 Hidden Oaks Dr |
| BILLING DATE: | 06/16/2020 |

| | |
|---|---|
| DUE DATE: | 06/23/2020 |

ARISTEA HUPP
965 Hidden Oaks Dr
Beaumont, CA 92223

### AMOUNT DUE

| | |
|---|---|
| PAST DUE AMOUNT | $28.51 |
| LATE CHARGE | $0.00 |
| **TOTAL AMOUNT DUE BY**   06/23/2020 | **$28.51** |

### AMOUNT ENCLOSED

REMIT PAYMENT TO:



BCVWD
PO BOX 2037
BEAUMONT CA 92223-0937

0371720000000028518

You're eligible for
assistance

Account Ending In:
6800

PO Box 6175
Sioux Falls  SD 57117-6175

*4 MONTHS
PAST DUE
Pat -*

June 17, 2020

00005533 BB 1OZ 169 BDFA8122 AM1

ARISTEA HUPP
965 HIDDEN OAKS DR
BEAUMONT CA 92223-8527

citicards.com

**Dear  ARISTEA HUPP:**

**Why we're writing you**

We understand that you've been impacted by COVID-19. We are here to support you during this time. As described in this confirmation, we will be waiving late fees and the requirement to make the minimum payment due shown on your billing statement  for your  Costco Anywhere Visa® account to help make a difficult situation more manageable. If you choose not to make a monthly payment, you must still repay all account balances (including interest). See the Promotions paragraph below for information on certain promotional balances.

Below are the details:

You are not required to pay the minimum payment due shown on your billing statement for two consecutive billing periods, starting with the minimum payment that was due when you contacted us. Also, we will not assess late fees during this period.

At the end of this waiver period, you will be required to resume making regular minimum payments on your account, as shown on your monthly billing statement. Late fees will apply to any late payments made after the waiver period ends.

Please review your monthly billing statement carefully. Your statement will tell you when your waiver period ends and when you will be required to resume making monthly payments.

**Important information about interest**

Interest will continue to accrue on each of your account balances, as applicable, and will be added to your account during the waiver period. This means that your account balance may increase if you do not make a payment during the waiver period, even if you do not use your account during this time. It also means that your minimum payment after the waiver period may be larger than it would have been if you had made payments during this period.

**Promotions**

If you have a Citi Flex Plan, the separate amount due for that plan that is calculated and included in the minimum payment due will be deferred for two billing periods and we will extend the term of that plan. Please note that interest will continue to accrue on your Citi Flex Plan balances during the period in which you are not required to pay the minimum payment due shown on your billing statement.

**If your account is past due or over the credit limit**

Past due or over credit limit amounts may be reflected in the minimum payment due shown on your billing statement during the waiver period, which consists of two consecutive billing periods in which you are not required to pay the minimum payment due. You are not required to pay either amount during that waiver period.

0/L0/C09112/001/ZZ/SY/ZP/8000/SYSTEMB/I2020061380225221/3633/3633/524/ D

Solera Oak Valley Greens Association

June 16, 2020



—LATE NOTICE—

Aristea Hupp
965 Hidden Oaks Dr
Beaumont, CA 92223

Re:   **Late Notice**
      Solera Oak Valley Greens Association
      965 Hidden Oaks Dr , Beaumont, CA 92223
      1257000301

Dear Aristea Hupp,

Our records show an unpaid balance on your account of **$3395.51**. A late fee of **$20.30** has been charged to your account based on your Association's delinquency policy. Solera Oak Valley Greens Association relies on your prompt payment of assessments so that it may meet its obligations in a timely manner.

Please forward your payment immediately to avoid further late fees and penalties.

If you have any questions, please call the Accounts Receivable Customer Service Team at (949) 833-2600 or e-mail at customercare@keystonepacific.com.

Sincerely,

For the Board of Directors of
Solera Oak Valley Greens Association

## A.R. Customer Service Team

Accounts Receivable Customer Service Team

**NEW MAILING ADDRESS FOR PAYMENTS:**
C/O Keystone Pacific Property Management, LLC
PO BOX 513380
LOS ANGELES, CA 90051-3380

*Proudly Managed By*
Keystone Pacific Property Management, LLC

16775 Von Karman #100          30021 Tomas Road #160          41593 Winchester Road #113          3155-D Sedona Court
Irvine, CA 92606               Rancho Santa Margarita, CA 92688     Temecula, CA 92590                Ontario, CA 91764
(949) 833-2600                 (949) 833-2600                 (951) 491-6866                     (909) 297-2550

soleraovg.com

 Gmail

**aristea hupp <ariehupp@gmail.com>**

---

# Disconnection of Cellular Service
1 message

---

**DoNotReply@consumercellular.com**
<DoNotReply@consumercellular.com>
To: ariehupp@gmail.com

Sat, Jul 11, 2020 at
10:32 AM


SUPPORT

## DISCONNECTION OF SERVICE
### ACCOUNT #: 103892941

Dear Aristea Hupp,

Your cellular phone account with Consumer Cellular is past due. This has resulted in your service being disconnected as of 07/11/20. The total amount due is $119.60.

Your account is on our AutoPay service which automatically charges the amount due to your credit or debit card on the invoice due date. We have attempted to process this charge several times but the transactions have been denied. This may be caused by a change in your card (the card number or expiration date) or you may have exceeded the credit card's limit.

Please contact us immediately to verify your credit card information that we have on file and make payment.

- **Update Online:** *My.ConsumerCellular.com*
- **Customer Support:** Call us at *(888) 345-5510*

Your cellular number is available for approximately 30 days. If you would like to reinstate service after that time, a new cellular number may need to be issued.

Case 5:16-cv-00370-VAP-SP    Document 92    Filed 10/21/20    Page 19 of 106    Page ID #:2730

We look forward to receiving your payment and getting your service back up and running as quickly as possible. If you have any questions, please give us a call at *(888) 345-5510*.

Thank you for your prompt response to this matter. We appreciate your business and the opportunity to serve you.

Sincerely,

Consumer Cellular Customer Service



© 2020 Consumer Cellular, Inc. Learn more at *(888) 345-5510*.
All other products are trademarked by their respective manufacturers.
Privacy and Security

This message was sent to: ariehupp@gmail.com

Consumer Cellular
12447 SW 69th Avenue
Portland, OR 97223-8517

Communication Code: 40005



1  Paul Hupp
   965 Hidden Oaks Drive
2  Beaumont, CA. 92223
   *In Propria Persona*

3

        LODGED
   CLERK, U.S. DISTRICT COURT

4                                    UNITED STATES DISTRICT COURT
        AUG 1 7 2020
5                                    CENTRAL DISTRICT OF CALIFORNIA
   CENTRAL DISTRICT OF CALIFORNIA
6  EASTERN DIVISION   BY DEPUTY

7                                         )
                                          )
8  Paul Hupp,                             )
                                          )
9          Plaintiff,                     )    Case No.: CV-20-
                                          )
10             v.                         )    **PLAINTIFF PAUL HUPP'S COMPLAINT
                                          )    AND DEMAND FOR JURY TRIAL; FOR
11 Rebecca Lynn Dugan,                    )    TEMPORARY AND PERMANENT
   John Washburne Vineyard,               )    INJUNCTION; FOR DECLARATORY
   Leslie Irene Ryder, A/K/A Leslie Irene Hupp; )  RELIEF; REMOVAL OF TRUSTEE;
12 Lisa Martinez Shiozaki;                )    EQUITABLE RELIEF**
   Kellen S. Stevens;                     )
13 Dennis M. Sandoval;                    )
   De La Housaye & Associates,  A Law     )
14 Corporation;                           )
   Roes 1-10;                             )
15 Individually, Jointly, Jointly and Severally, )
               Defendants.                )
16                                        )
                                          )
17                                        )

18

19                                **COMPLAINT**

20
        Plaintiff Paul Hupp ("PHUPP"), in *Propria Persona*, files this Complaint
21
   ("COMPLAINT") against Defendants Rebecca Lynn Dugan ("DUGAN"), John Washburne
22
   Vineyard  ("VINEYARD") Leslie Irene Ryder, A/K/A Leslie Irene Hupp ("RYDER"); Lisa
23
   Martinez Shiozaki ("SHIOZAKI"); Kellen S. Stevens ("STEVENS"); Dennis M. Sandoval
24
   ("SANDOVAL"); De La Housaye & Associates,  A Law Corporation ("DLHA") and Roes 1-10
25
   ("ROES") as follows:

                                   -1-                    Paul Hupp

## PARTIES, VENUE AND JURISDICTION

1. PHUPP resides and is domiciled within the state of California.

2. DUGAN is employed, resides and is domiciled within the state of California and is a licensed attorney and current Superior Court Judge (SBN#91858).

3. VINEYARD is employed, resides and is domiciled within the state of California and is a licensed attorney and current Superior Court Judge (SBN#144704).

4. DUGAN and VINEYARD are Superior Court judges for the County of Riverside, State of California.

5. RYDER resides and is domiciled within the state of California.

6. SHIOZAKI resides and is domiciled within the state of Utah.

7. STEVENS is employed, resides and is domiciled within the state of California and is a licensed attorney (SBN#320276).

8. SANDOVAL is employed, resides and is domiciled within the state of California and is a licensed attorney (SBN#186922).

9. On information and belief DLHA is a domestic corporation that was founded on August 23, 2000, with the corporate license number C2196623, and is doing business within the state of California. Collette Angela De La Housaye is the sole shareholder and is a licensed attorney (SBN#144218).

10. PHUPP does not know the true names and capacities, whether individual, corporate, associate, or otherwise, of Roes 1-10, inclusive, and therefore sue said Roes under fictional names. PHUPP alleges, upon information and belief, that each named Roe is responsible in some manner for committing the acts upon which this action is based. PHUPP will amend this COMPLAINT to show their true names and capacities if and when the same have been ascertained.

11. DUGAN, VINEYARD, RYDER, SHIOZAKI, STEVENS, SANDOVAL, DLHA and ROES collectively are "DEFENDANTS".

12. Riverside County is a body of state government located within the Central District of California for jurisdictional purposes.

13. VINEYARD and DUGAN are sued both individually and in their official capacity as Superior Court judges for the County of Riverside.

14. DEFENDANTS are sued individually, jointly and jointly and severally.

15. This action arises under the United States Constitution, particularly under the provisions of the First and Fourteenth Amendments to the United States Constitution and under the laws of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988.

16. This court has original jurisdiction of this action under the provisions of Title 28 of the United States Code, Section 1343-Civil rights and elective franchise.

17. This court has original jurisdiction of this action under the provisions of Title 28 of the United States Code, Section 1331-Federal question.

18. This court has supplemental jurisdiction of state claims that arise out of the nucleus of operative facts, case, or controversy common to the Plaintiff's federal claims under the provisions of Title 28 of the United States Code, Section 1367(a)-Supplemental Jurisdiction; including general contract and tort law under several provisions of the Cal. Civil Code, including but not limited to; §1572 and § 1714(a) negligence.

19. The "The Revocable Trust of Aristea Hupp" ("TRUST") of Aristea Hupp ("AHUPP") is the primary subject of supplemental jurisdiction of this action.

20. This court has venue over this case under the provisions of Title 28 of the United States Code, Section 1391(b) and (c).

This reference incorporates the above paragraphs into the following cause of actions.

## **FACTUAL ALLEGATIONS**

21. PHUPP is the primary beneficiary of TRUST. SHIOZAKI agreed to act as TRUSTEE. RYDER agreed to act as successor TRUSTEE. If for any reason, except fraud, SHIOZAKI or RYDER declined to act as TRUSTEE they could appoint a professional TRUSTEE. AHUPP named SHIOZAKI and RYDER as TRUSTEE and successor TRUSTEE because they are the cousin and sister of PHUPP and as such could reduce the costs of TRUST administration over a professional TRUSTEE. RYDER was Executor ("EXECUTOR") of TRUST.

22. SHIOZAKI and RYDER, as TRUSTEE and EXECUTOR of TRUST owed a "Fiduciary Duty" ("FIDUCIARY DUTY") to TRUST.

23. On information and belief, DLHA was the law firm AHUPP hired to set up and finalize TRUST and STEVENS was the lawyer at DLHA drafting and handling TRUST.

24. AHUPP passed on April 12, 2020. SHIOZAKI became TRUSTEE. PHUPP contacted SHIOZAKI on May 4, 2020, regarding TRUST issues that concerned PHUPP. SHIOZAKI, for the very first time, stated she had no intention of ever being TRUSTEE, and in fact said she became TRUSTEE as a "favor" to AHUPP. SHIOZAKI did not work whatsoever as TRUSTEE, and never intended to despite she agreement to be TRUSTEE. RYDER had accepted responsibility to be successor TRUSTEE if SHIOZAKI could not continue on as TRUSTEE. RYDER refused to ne successor TRUSTEE. Neither SHIOZAKI nor RYDER did any TRUSTEE work whatsoever.

25. PHUPP had arranged a phone call with SHIOZAKI as TRUSTEE and STEVENS, who was representing SHIOZAKI as TRUSTEE, for <u>May 7, 2020</u>. DLHA emailed PHUPP that in addition to SHIOZAKI and STEVENS the sole shareholder and owner of DLHA, "Ms. De La Housaye" would also be participating. PHUPP specifically asked if "Ms. De La Housaye" would be billing TRUST for her time, and if she would be PHUPP did not accept her "participation" in the call as it amounted to double billing. Neither STEVENS nor DLHA replied. The attempt to double bill TRUST caused PHUPP great concern as double billing amounts to self-dealing and unjust enrichment.

26. On <u>May 5, 2020</u>, SHIOZAKI sent PHUPP an email with the subject matter titled "New Trustee" stating: "*<u>Good Afternoon Paul, I spoke with Dennis Sandoval today. He is a Trustee located close to your area that will be appointed to take my place, so I wanted to introduce you to him. He has a lot of experience and I felt really comfortable with him. He is copied in on this email</u>*." PHUPP was shocked at SHIOZAKI'S email, and became more suspicious of the activities of DEFENDANTS and called SHIOZAKI and asked her what she was doing. SHIOZAKI stated she had agreed to be TRUSTEE as a "favor" but never actually intended to be TRUSTEE. SHIOZAKI then stated that SANDOVAL would be taking over. PHUPP asked why SHIOZAKI did not confer with the "appointment" of a new TRUSTEE and SHIOZAKI said she didn't have to, and that STEVENS instructed SHIOZAKI not to talk with PHUPP at all.

27. RYDER as the successor TRUSTEE refused to become TRUSTEE. SHIOZAKI and RYDER were responsible for SANDOVAL being named TRUSTEE.

28. SHIOZAKI and RYDER never intended to ever act as TRUSTEE, and never engaged in any TRUSTEE work whatsoever. By agreeing to be TRUSTEE and successor TRUSTEE without ever intending to actually become TRUSTEE SHIOZAKI or RYDER were not "Bonafide TRUSTEE" or "Bonafide Successor TRUSTEE" and neither had legal authority to install any successor TRUSTEE, including SANDOVAL. As SANDOVAL'S "appointment" as TRUSTEE was without legal authority he is not, and cannot act as TRUSTEE in any manner whatsoever.

29. Concerned about self-dealing and unjust enrichment by DEFENDANTS, on May 12, 2020, PHUPP asked STEVENS and DLHA for a full accounting of all expenses billed to TRUST since AHUPP passed on April 12, 2020. Neither STEVENS nor DLHA complied. An accounting of a trust must be made once per year without asking, and an accounting can be demanded of a trust at any time by a beneficiary. A beneficiary has a right to a trust accounting any time a new Trustee is installed, such as SANDOVAL. There has been no accounting of TRUST to PHUPP whatsoever.

30. On June 10, 2020, PHUPP notified STEVENS and DLHA that at least 15 different vendor accounts of AHUPP'S estate had not been paid, were in default, and were in danger of irreparable harm due to late fees and collection expenses (and liens being placed on TRUST property). There are three (3) real properties in TRUST, and all are in homeowner associations requiring monthly dues of $606/monthly aggregate (1-$203; 2-$203; 3-$200). STEVENS responded on June 15, 2020, asking PHUPP to contact SANDOVAL. PHUPP does not

consider SANDOVAL'S "appointment" to TRUSTEE as valid and any

communication with SANDOVAL could be viewed as a waiver of PHUPP'S

objection to SANDOVAL as TRUSTEE.

31. To date no bills have been paid by SANDOVAL, or RYDER as EXECUTOR of

TRUST. The water bills for two (2) TRUST real properties were on a 24 hour-

shut off notice. All three (3) real properties have been notified by the respective

HOA'S that liens are about to be placed on the properties due to non-payment of

the HOA fees. At present the HOA fees are $3,030 minus late fees (5x$606).

32. On May 29, 2020, PHUPP borrowed $1,200 and paid multiple vendor accounts

that were in default, including: two (2) water bills with shut-off notices for

TRUST real properties; AHUPP Discover credit card; Spectrum

Communications bill; Frontier Communications bill; Chewy's $100/month dog

food bill which was on automatic deposit with AHUPP'S Discover credit card,

which is for the car of AHUPP'S four (4) senior rescue dogs of which PHUPP is

now the care-giver of. RYDER had contracted with AHUPP to be the guardians-

for-life of her four (4) rescue dogs. After AHUPP passed RYDER refused to

honor her contract with AHUPP.

33. One (1) of the real properties owned by TRUST has a trust deed loan that has not

been paid since AHUPP passed April 12, 2020, despite more than $3,200 in

rental income being deposited into AHUPP'S/ TRUST Wells Fargo checking

account during the same time period. The lender has sent notification that a

foreclosure process is being initiated.

34. Numerous other vendor accounts have not been paid by EXECUTOR (RYDER), TRUSTEE, or anyone else and are in default and irreparable harm is being done in the form of clearly avoidable late fees, reconnection fees for utilities, and for legal fees and expenses that can result from lies being placed on the real properties. Two (2) of AHUPP'S senior rescue dogs need medical attention that cannot be provided due to lack of funds.

35. To date there have been no funds released from TRUST to PHUPP by EXECUTOR, TRUSTEE or anyone else, despite PHUPP informing STEVENS and DLHA of default/non-payment facts on <u>June 10, 2020</u>.

36. The three (3) real properties of TRUST are suffering irreparable harm due to excessive, and 100% avoidable, late fees, lien filings and possible foreclosure actions. AHUPP'S four (4) rescue dogs are suffering irreparable harm for lack of funds to pay for food and to seek medical attention. PHUPP is suffering irreparable harm because he is unable to pay for current living expenses and is borrowing money from friends to pay for expenses of TRUST, including necessary utility expenses.

37.     AHUPP, and now her estate, is involved in ongoing civil litigation dating to <u>2015</u>. The California District Court of Appeal ("DCA"), Fourth Appellate District, Division Two, was notified by PHUPP of the situation. The DCA gave the estate until <u>July 10, 2020</u>, to file for intervention if it wished to continue. No one that has legal authority to intervene at this point in time and no party has intervened, including the *alleged* TRUSTEE SANDOVAL, causing irreparable harm to TRUST.

Paul Hupp

38. DUGAN was the former "Presiding Judge" of the Riverside County Superior Court; 2017-2018.

39. VINEYARD is the current "Presiding Judge" of the Riverside County Superior Court; 2019-Present.

40. On July 10, 2020, PHUPP filed a Verified Complaint in the Riverside County Superior Court with an accompanying Emergency *Ex Parte* Application for immediate intervention. The Emergency *Ex Parte* Application was not set in the normal 24-48 hour period, but was set 10 days out, for July 20, 2020, in order for the Superior Court (VINEYARD) to review the papers and have adequate time to rule and calendar the Verified Complaint and Emergency *Ex Parte* Application. It was imperative that the Emergency *Ex Parte* Application was heard, and ruled on, by the Court immediately due to the irreparable harm being caused by SANDOVAL, the *alleged* TRUSTEE of TRUST, so: 1) emergency cancer surgery could be performed on one (1) of AHUPP'S senior rescue dogs; 2) have SANDOVAL enjoined from engaging in any future TRUST business; and 3) the immediate transfer of $5,000 from TRUST to PHUPP so TRUST bills could be paid, all of which were in default by more than three (3) months at the time of filing, on July 10, 2020, and are as of today in default by more than four (4) months.

41.    PHUPP has filed in excess of 10 civil actions in the Riverside County Superior Court between 2017-present and neither DUGAN nor VINEYARD have made any order whatsoever to either GRANT or DENY calendaring PHUPP'S actions.

42.    DUGAN, and later VINEYARD, refused to calendar any of the actions; DUGAN and VINEYARD would not return the actions; DUGAN and VINEYARD refused to state what happened to the actions; DUGAN and VINEYARD refused any status update on the actions; DUGAN and VINEYARD would not rule on the actions in any manner whatsoever. VINEYARD and DUGAN simply allowed them to be "received" by the clerk and that was the end of the actions.

43.  PHUPP, under 28 U.S. Code § 2403(b), hereby alleges that California Code of Civil Procedure §391.7, subdivision (c) ("§391.7") is unconstitutional "as applied" to PHUPP by DUGAN and VINEYARD. PHUPP, under 28 U.S. Code § 2403(b), further alleges that §391.7 is vague, ambiguous, over broad and is facially unconstitutional.

44. On December 5, 2019, DUGAN and VINEYARD, in conspiracy with the Riverside County District Attorney, filed a felony criminal information against PHUPP *alleging* violations of Penal Code §69a "Resisting an Executive Officer" ("§69a"). The *alleged* §69a violation/s were based on a simple statement that if DUGAN and VINEYARD refused to process his applications to file the civil actions he had submitted within 30 days he would go to their home and get a ruling on their front doorstep.  The statements were constitutionally protected free speech under the First Amendment; there was no "probable cause" to support the filing of the criminal complaint; any criminal complaint, felony or misdemeanor. *In arguendo*, even if the statements were not constitutionally protected free speech under the First Amendment they were submitted in civil

litigation and would receive 100% protection from any civil (*or criminal*) proceeding under California Civil Code §47 ("§47"), the "Litigation Privilege". This reference incorporates the above paragraphs into the following cause of actions.

## CAUSE OF ACTION NUMBER ONE (1): BREACH OF FIDUCIARY DUTY

45. DEFENDANTS had a FIDUCIARY DUTY to TRUST.

46. DEFENDANTS breached their FIDUCIARY DUTY when SHIOZAKI agreed to be TRUSTEE and RYDER as successor TRUSTEE when in fact neither ever intended to be TRUSTEE.

47. DEFENDANTS' actions were the proximate cause of the breached FIDUCIARY DUTY and resulted in damages to TRUST, and PHUPP as beneficiary.

48. DEFENDANTS' breach of FIDUCIARY DUTY resulted in damages to TRUST, and PHUPP as beneficiary.

This reference incorporates the above paragraphs into the following cause of actions.

## CAUSE OF ACTION NUMBER TWO (2): FRAUD

49. All DEFENDANTS misrepresented to AHUPP and TRUST that SHIOZAKI agreed and intended to be a "Bonafide TRUSTEE", and that RYDER agreed and intended to be a "Bonafide Successor TRUSTEE".

50. DEFENDANTS knew that neither SHIOZAKI nor RYDER ever intended to actually be TRUSTEE, and in fact both breached their FIDUCIARY DUTY as TRUSTEE within 22 days of AHUPP passing and their appointment.

51. DEFENDANTS intended to defraud AHUPP and TRUST by inducing her reliance on DEFENDANTS with falsehoods and misrepresentations of

compliance as TRUSTEE and Successor TRUSTEE and were the causation of

damages.

52. AHUPP and TRUST relied on DEFENDANTS fraudulent misrepresentations.

53. Severe damages resulted from DEFENDANTS fraudulent misrepresentations,

including this lawsuit.

This reference incorporates the above paragraphs into the following cause of actions.

## CAUSE OF ACTION NUMBER THREE (3): BREACH OF CONTRACT

54. RYDER entered into a contract with AHUPP to be the "GUARDIANS-FOR

LIFE" of AHUPP's four (4) small rescue dogs when AHUPP passed.

55. RYDER breached that duty.

56. TRUST, AHUPP'S rescue dogs and PHUPP suffered damages as a direct and

proximate cause of RYDER'S breach.

57. RYDER is responsible for her breach and damages.

This reference incorporates the above paragraphs into the following cause of actions.

## CAUSE OF ACTION NUMBER FOUR (4): BREACH OF FIDUCIARY DUTY

58. AHUPP wished her body cremated, with her ashes split 50/50 between her two

(2) children: PHUPP and RYDER. As EXECUTOR of TRUST RYDER had a

FIDUCIARY DUTY to split AHUPP'S ashes as she was instructed. On May 4,

2020, two (2) urns with AHUPP ashes, to be split 50/50 between PHUPP and

RYDER, were Fed Ex delivered to RYDER. RYDER did not have a legal right

to 100% of AHUPP cremated ashes but took possession of them anyway.

59.  RYDER breached her FIDUCIARY DUTY as EXECUTOR by failing to

provide PHUPP 50% of AHUPP cremated ashes.

60. RYDER was the sole and proximate cause of said breach.

61. PHUPP suffered damages by RYDER breach of FIDUCIARY DUTY and RYDER is responsible for her breach.

This reference incorporates the above paragraphs into the following cause of actions.

### CAUSE OF ACTION NUMBER FIVE (5): BREACH OF FIDUCIARY DUTY

62. Copies of AHUPP'S "Death Certificate" were to be given to her two (2) children: PHUPP and RYDER. As EXECUTOR of TRUST RYDER had a FIDUCIARY DUTY to provide PHUPP with HIS copy of AHUPP'S "Death Certificate". On May 4, 2020, three (3) "Death Certificates" were Fed Ex delivered to RYDER. RYDER did not have a legal right to keep all three (3) of AHUPP'S "Death Certificate,", but took possession of them anyway.

63. RYDER breached her FIDUCIARY DUTY as EXECUTOR by failing to provide PHUPP with a copy of AHUPP'S "Death Certificate".

64. RYDER was the sole and proximate cause of said breach.

65. PHUPP suffered damages by RYDER breach of FIDUCIARY DUTY and RYDER is responsible for her breach.

This reference incorporates the above paragraphs into the following cause of actions.

### CAUSE OF ACTION NUMBER SIX (6): UNJUST ENRICHMENT

66. DEFENDANTS have unjustly enriched themselves by double-billing and unlawfully appointing SANDOVAL, a licensed lawyer, as TRUSTEE. DEFENDANTS have further breached their FIDUCIARY DUTY and unjustly enriched themselves by failing to competently perform the duties of TRUSTEE and EXECUTOR.

Paul Hupp

67. TRUST and PHUPP are suffering   damages DEFENDANTS unjust enrichment.

68. DEFENDANTS are the proximate cause of damages.

This reference incorporates the above paragraphs into the following cause of actions.

## CAUSE OF ACTION NUMBER SEVEN (7): DECLARATORY AND INJUNCTIVE RELIEF

69. DEFENDANTS, through breach of their FIDUCIARY DUTY, "appointed" SANDOVAL as TRUSTEE. But for such breach SANDOVAL would not have been "appointed" TRUSTEE. DEFENDANTS' actions since AHUPP passed on April 12, 2020, including SANDOVAL and RYDER, have caused extensive and irreparable harm to TRUST and beneficiary PHUPP.

70. PHUPP seeks a declaration that DEFENDANTS breached their FIDUCIARY DUTY and SANDOVALS' "appointment" was unlawful and order SANDOVAL removed.

71. PHUPP seeks a preliminary and permanent injunction enjoining DEFENDANTS, agents, representatives, assignees, successors and all other entities acting in concert with DEFENDANTS from engaging in any further action relating to or concerning TRUST, and that PHUPP be appointed temporary TRUSTEE until PHUPP can secure a permanent TRUSTEE for TRUST.

72. PHUPP seeks an accounting of all income received by TRUST, and all expenses billed to TRUST, since AHUPP passing on April 12, 2020.

73. PHUPP seeks an immediate disbursement from TRUST of $5,000 to bring all delinquent/defaulted TRUST bills current.

This reference incorporates the above paragraphs into the following cause of actions.

Paul Hupp

## CAUSE OF ACTION NUMBER EIGHT (8): INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

74. The DEFENDANTS in this action engaged in numerous civil wrongs as outlined in this COMPLAINT, including engaging in intentional and reckless conduct. These acts by DEFENDANTS were beyond the bounds of human decency. DEFENDANTS did these acts knowingly, willfully, intentionally and maliciously, with the intent to cause PHUPP severe emotional distress and mental anguish.

75. DEFENDANTS conduct was both extreme and outrageous. Specifically the extreme and outrageous actions of DEFENDANTS; 1) Breach of FIDUCIARY DUTY; 2) RYDER failing to give PHUPP his 50% of his mother's cremated ashes ; 3) failing to pay TRUST bills and incurring unnecessary late fees and lien expenses; 4) forcing PHUPP to borrow money to pay TRUST expenses.

76. As a direct and proximate cause of this extreme and outrageous conduct by DEFENDANTS, stated *supra*, PHUPP suffered extreme emotional and psychological distress. DEFENDANTS' actions also caused embarrassment, humiliation, shame, fright, fear, and grief in PHUPP, and DEFENDANTS actions were more than a reasonable person could endure.

77. PHUPP has suffered severe and extreme emotional and psychological distress.

78. Said illegal actions by DEFENDANTS were unreasonable, performed knowingly, willfully, intentionally, deliberately, with deliberate indifference, maliciously, with gross negligence, callousness, indecency and with reckless disregard and indifference to the laws of the state of California, specifically their breach of FIDUCIARY DUTY.

79. Defendants are liable for their malicious actions damaging PHUPP.

80. Any contrary explanation offered by DEFENDANTS for their conduct is pretext to shield all DEFENDANTS from liability of their wrongful actions.

This reference incorporates the above paragraphs into the following cause of actions.

### CAUSE OF ACTION NUMBER NINE (9): BREACH OF FIDUCIARY DUTY

81. On May 12, 2020, in an email to STEVENS and DLHA PHUPP asked for an accounting of TRUST, including all expenses that TRUST had incurred since AHUPP passed on April 12, 2020. As of the filing of this action there has been no accounting of TRUSTEE, including expenses, by DEFENDANTS.

82. DEFENDANTS breached their FIDUCIARY DUTY by failing to provide an accounting and expenses.

83. DEFENDANTS are the sole and proximate cause of said breach.

84. TRUST and PHUPP suffered damages by DEFENDANTS breach of FIDUCIARY DUTY and DEFENDANTS is responsible for said breach.

This reference incorporates the above paragraphs into the following cause of actions.

### CAUSE OF ACTION NUMBER TEN (10): BREACH OF FIDUCIARY DUTY

85. As EXECUTOR RYDER has a FIDUCIARY DUTY to TRUST. TRUST is the successor to the litigation of Riverside Superior Court case no.: RIC-1512779. Solera Oak Valley Greens Association ("SOLERA") and 10 SOLERA Board of Directors ("BOARD") are named Defendants. As EXECUTOR of TRUST RYDER has a FIDUCIARY DUTY to not take any action that could be detrimental or cause harm to TRUST.

86. RYDER breached her FIDUCIARY DUTY by making multiple detrimental statements about and concerning PHUPP and TRUST to SOLERA and SOLERA BOARD after AHUPP passed on April 12, 2020. These statements have already been used adversely against TRUST in RIC-1512779 litigation.

87. RYDER is the sole and proximate cause of said breach of her FIDUCIARY DUTY to PHUPP and TRUST.

88. PHUPP and TRUST suffered damages by RYDER'S breach of FIDUCIARY DUTY and RYDER is responsible for said breach.

This reference incorporates the above paragraphs into the following cause of actions.

## CAUSE OF ACTION NUMBER ELEVEN (11): VIOLATION OF CONSTITUTIONALLY PROTECTED RIGHTS

89. DUGAN and VINEYARD violated PHUPP First Amendment rights, including: 1) denial of access to the Courts; 2) unlawful and criminal retaliation against PHUPP based on PHUPP'S constitutionally protected free speech under the First Amendment.

90. DUGAN and VINEYARD are liable to PHUPP for damages.

91. DUGAN and VINEYARD cannot receive Judicial Immunity" because their felonious actions violated state and federal law.

This reference incorporates the above paragraphs into the following cause of actions.

## CAUSE OF ACTION NUMBER TWELVE (12): DECLARATORY AND INJUNCTIVE REIEF AGAINST DUGAN AND VINEYARD; DELCARE §391.7 UNCONSTITUTIONAL AS APPLIED BY DUGAN AND VINEYARD

92. Declare DUGAN and VINEYARD'S actions of failing to GRANT or DENY PHUPP'S action under §391.7 as unconstitutional and DUGAN and VINEYARD violated PHUPP'S constitutionally protected rights.

93. Declare §391.7 unconstitutional "as applied" by DUGAN and VINEYARD.

94. Enjoin DUGAN and VINEYARD from any and all future unconstitutional actions regarding §391.7 as stated *supra*, whether against PHUPP or any other party.

### **PRAYER FOR RELIEF**

ON THESE ABOVE LISTED GROUNDS, Plaintiff PHUPP prays that this Court GRANT judgment in his favor and against DEFENDANTS as follows;

1. For compensatory, special and general damages according to proof, but exceeding $1,000,000;

2. For punitive and exemplary damages according to proof;

3. For prejudgment and post judgment interest;

4. All fees, costs and expenses for the bringing of this claim, including but not limited to, all attorney fees and costs if said fees and costs are incurred;

5. For declaratory and injunctive relief against DEFENDANTS, including RYDER, SANDOVAL, STEVENS and DLHA, enjoining them from taking any further actions relating to relating to TRUST;

6. To appoint PHUPP as temporary TRUSTEE for 60 days, or until a new TRUSTEE can be appointed by PHUPP;

7. For damages against DUGAN and VINEYARD for criminally violating PHUPP'S constitutionally protected rights secured by the First Amendment;

8. To declare that DUGAN and VINEYARD violated PHUPP'S constitutionally protected rights secured by the First Amendment by failing to calendar, or return with the reason/s why not calendared, this instant action that was lodged on July 10, 2020, or PHUPP'S multiple previous civil actions (10+)

going back to 2017, and prospectively enjoin them from such conduct against PHUPP or any other party;

9. To declare that VINEYARD violated PHUPP'S constitutionally protected rights secured by the First Amendment by failing to calendar, or return with the reason/s why not calendared, PHUPP'S Emergency *Ex Parte* Application that was lodged on <u>July 10, 2020</u>, with a hearing date of <u>July 20, 2020</u>;

10. All other appropriate legal and equitable relief.

## <u>RIGHT TO AMEND</u>

Plaintiff PHUPP hereby expressly reserves the right to amend this action to include any actions arising from discovery and to add in Roe defendants.

## <u>JURY DEMAND</u>

Plaintiff PHUPP requests trial by jury

Executed at: Beaumont CA, on <u>August 10, 2020</u>.

Respectfully Submitted.

Dated this 10th day of August, 2020

/s/ Paul Hupp
Paul Hupp
965 Hidden Oaks Drive
Beaumont, CA. 92223
*In Propria Persona*

1 | Paul Hupp
2 | 965 Hidden Oaks Drive
  | Beaumont, CA. 92223
  | *In Propria Persona*
3 |

LODGED
CLERK, U.S. DISTRICT COURT

AUG 17 2020

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION     BY DEPUTY

4 | UNITED STATES DISTRICT COURT
5 | CENTRAL DISTRICT OF CALIFORNIA
6 |

7 | Paul Hupp,                                    )
  |                                               )
8 |              Plaintiff,                       )
  |                                               )
9 |        v.                                     )   Case No.: CV-20-
  |                                               )
10 | Rebecca Lynn Dugan,                          )
   | John Washburne Vineyard,                     )   **PLAINTIFF PAUL HUPP'S MOTION TO**
   | Leslie Irene Ryder, A/K/A Leslie Irene Hupp; )   **DISQUALIFY MAGISTRATE JUDGE**
11 | Lisa Martinez Shiozaki;                      )   **SHERI NICOLE PYM AND DISTRICT**
   | Kellen S. Stevens;                           )   **COURT JUDGE VIRGINIA ANNE**
12 | Dennis M. Sandoval;                          )   **PHILLIPS <u>FOR CAUSE</u>; DECLARATION**
   | De La Housaye & Associates,  A Law           )   **OF PAUL HUPP IN SUPPORT**
13 | Corporation;                                 )
   | Roes 1-10;                                   )
14 | Individually, Jointly, Jointly and Severally,)
   |              Defendants.                     )
15 |                                              )
   |                                              )
16 |                                              )
   |                                              )

17 |
   |                                         **I**
18 |                                   **Introduction**
19 |
   |       To the United States District Court for the Central District of California ("COURT"),
20 |
   | Plaintiff Paul Hupp ("PHUPP") HEREBY Files THIS Motion to Disqualify Magistrate Judge
21 |
   | Sheri Nicole Pym (SBN# 175062 ("PYM")) and District Court Judge Virginia Anne Phillips
22 |
   | (SBN# 105237 (PHILLIPS")) *for cause* pursuant to Under 28 U.S.C. §§ 144, 455.
23 |

24 |

25 |

## II
## Memorandum of Points and Authorities

PHUPP brings this motion based on bias[1] of PYM and PHILLIPS as it relates to a prior ruling declaring PHUPP a "Vexation Litigant" in case EDCV-16-00370 VAP (SP). Under 28 U.S.C. §144, whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding *See* 28 U.S.C. §144; Pesnell v. Arsenault, 543 F.3d 1038, 1043 (9thCir. 2008); U.S. v. Johnson, 610 F.3d 1138, 1147 (9thCir. 2010). Section 144 also provides that "[t]he affidavit shall state the facts and the reasons for the belief that bias and prejudice exists... [and a] party may only file one such affidavit in any case." *See* United States v. Sibla, 624 F.2d 864, 867 (9thCir. 1980). 28 U.S.C. §144 expressly conditions relief upon the filing of a timely and legally sufficient affidavit/declaration. Id. (citing *inter alia*, United States v. Azhocar, 581 F.2d 735, 738-40 (9thCir. 1978), cert. denied 440 U.S. 907 (1979). "If the judge to whom a timely motion is directed determines that the accompanying affidavit specifically alleges facts stating grounds for recusal under 28 U.S.C. §144, the legal sufficiency of the affidavit has been established, and the motion must be referred to another judge for a determination of its merits." *Id.* (citing Azhocar, 581 F.2d at 738).

Under 28 U.S.C. §455(a), "Any ... judge ... shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *See* Pesnell at 1043. 28 U.S.C. § 455(b) provides in relevant part, "...he shall also disqualify himself in the following circumstances:

---

[1] Under 28 U.S.C. §144, whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. 28 U.S.C. §144 provides the affidavit shall state the facts and the reasons for the belief that bias and prejudice exists. PHUPP has stated such facts of bias.

[w]here he has a personal bias or prejudice concerning a party ..." *See* 28 U.S.C. §455(b)(1). A motion under § 455 is addressed to, and must be decided by, the judge/s (PYM and PHILLIPS) whose impartiality is being questioned." *See* Bernard v. Coyne, 31 F.3d 842, 843 (9thCir. 1994). "Section 455 clearly contemplates that decisions with respect to disqualification should be made by the judge sitting in the case, and not by another judge." *Id.*, quoting United States v. Balistrieri, 779 F.2d 1191, 1202 (7thCir. 1985). "Section 455 includes no provision for referral of the question of recusal to another judge; if the judge sitting on the case is aware of grounds for recusal under section 455, that judge has a duty to recuse himself or herself." *See* Sibla, 624 F.2d at 868. Because " ...the test for personal bias or prejudice in section 144 is identical to that in section 455(b)(1) ... a motion properly brought pursuant to section 144 will raise a question concerning recusal under section 455(b)(1) as well as section 144."*See* Sibla, at 867.

**PYM and PHILLIPS, in case EDCV-16-00370 VAP (SP), re-litigated a "Vexation Litigant" issue that had already been fully and fairly litigate on the merits, and denied, in a previous civil action less than three (3) short years prior. See Hupp v. San Diego County District Attorney et al, Case No.: 12-cv-492 IEG (RBB), Docket #35, P.2, Footnote 1, dated June 4, 2012. PYM and PHILLIPS simply repeated *allegations* that the Attorney General of California had made in 12-cv-492 IEG (RBB), *identical allegations*, which were DENIED June 4, 2012. Issue and claim preclusion (res judicata and collateral estoppel) prevented PYM and PHILLIPS from getting a "do-over" because they did not like the outcome of Judge Gonzales June 4, 2012, ruling. The most telling factor in PYM and PHILLIPS declaring PHUPP, and his mother Aristea Hupp ("AHUPP") as "Vexatious Litigants" in EDCV-16-00370 VAP (SP) is that neither addressed the most relevant and material fact, that the Presiding United States District Court Judge for the Southern District of**

**California, Judge Irma E. Gonzalez. Judge Gonzalez refused to make the "finding" requested by the Attorney General, that PHUPP was a "Vexatious Litigant".** When the facts and law do not agree with your argument or ruling it appears that the best thing for PYM and PHILLIPS to do is ignore both, not mention either, and hope it goes away.

These are arguments made previously by PHUPP, on July 14, 2016, in case EDCV-16-00370 VAP (SP). PHUPP by this reference attaches that brief, and the law and argument in it, for the requisite showing of **bias** by PYM and PHILLIPS.

### III
### Conclusion

For the reasons set forth *supra* PHUPP prays that the COURT GRANT PHUPP'S Motion to disqualify both PYM and PHILLIPS for cause.

### IV
### Declaration

I, **Paul Hupp**, the above-entitled Respondent, declare the following;

1. I have personal knowledge of all statements and exhibits in this declaration.

2. If called upon to testify to this declaration in a court of competent jurisdiction I could and would testify to everything stated herein.

3. PYM and PHILLIPS declared PHUPP and his mother, AHUPP, "Vexation Litigants" in case EDCV-16-00370 VAP (SP). AHUPP had only filed four (4) cases in total in her entire life in Federal Court. PHUPP had filed 33 cases in the previous 13 years, of which four (4) were related to the State Bar and Magistrate Judge Rosalyn Merle Chapman (whom PYM ironically replaced) and her misstatement of the facts; four (4) were in Habeas Corpus actions, three (3) were related bankruptcy actions, and one (1) related Writ of Coram Nobis in the Southern District of CA; 12 in total and all of which PHUPP was entitled to file as

a matter of law, leaving just 21 various actions in the Southern and Central

Districts of California over a 13 year period. All of which had merit to be filed

because they were all filed under IFP applications, which required approval prior

to filing.

4. Particularly troubling by PYM and PHILLIPS ruling on their "Vexation Litigants"

OSC in case EDCV-16-00370 VAP (SP) was that it was identical in virtually

every respect to a previous Motion to have PHUPP declared a "Vexation Litigant"

in a prior case in the Southern District of California less than three (3) short years

prior, in Hupp v. San Diego County District Attorney et al, Case No.: 12-cv-492

IEG (RBB), Docket #35, P.2, Footnote 1, dated June 4, 2012. The Attorney

General of California made the identical allegations that PYM and PHILLIPS

made using the exact same cases. The AG'S "Vexation Litigant" Motion was

**DENIED**.  Denied by the Presiding United States District Court Judge for the

Southern District of California, Judge Irma E. Gonzalez. Judge Gonzalez refused

to make the "finding" requested by the AG, that PHUPP was a "Vexatious

Litigant". In fact Judge Gonzalez would not even make the finding that the

statements in the referenced cases are "factually true". That should have ended

any "Vexatious Litigant" issue on those cases. The issue was DENIED and neither

PYM nor PHILLIPS had standing to overrule the Presiding United States District

Court Judge for the Southern District of California, Judge Gonzalez. Issue

preclusion/collateral estoppel [should have] enjoined PYM and PHILLIPS from

yet again litigating that issue.

5. PHUPP raised these facts in his opposition to PYM and PHILLIPS "Vexatious Litigant" OSC, and to show that both PYM and PHILLIPS had no case they simply IGNORED that the Presiding United States District Court Judge for the Southern District of California had **DENIED** the issue just a three (3) years prior.

6. Attached is a true and correct copy of PHUPP'S July 12, 2016, Opposition to PYM and PHILLIPS "Vexatious Litigant" OSC. Even though these issues were the heart of PHUPP'S Opposition, they were not addressed by PYM or PHILLIPS, nor litigated in the appeal following case EDCV-16-00370 VAP (SP); they are therefore ripe for review and are properly before this Court now.

Executed August 10, 2020, Beaumont, CA

Dated this 10th day of August, 2020

/s/ Paul Hupp
Paul Hupp
965 Hidden Oaks Drive
Beaumont, CA. 92223
*In Propria Persona*

-6-                    Paul Hupp

Aristea Hupp
Paul Hupp
965 Hidden Oaks Drive
Beaumont, CA 92223
951-769-1268
*In Propria Persona*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**Aristea Hupp,**
**Paul Hupp**

        Plaintiffs,

      v.

**Solera Oak Valley Greens Association;**
**Keystone Pacific Property Management**
**Inc.;**
**Dennis Rice;**
**Richard Crowe;**
**Judith Paige McWilliams;**
**Patricia A. King;**
**Gary Michael Stoh;**
**Kathy J. Axberg;**
**John Lee Dorris;**
**Steven I. Mehlman;**
**Timothy Taylor;**
**Samuel Rojas;**
**Christine Rodgers;**
**Jack Huntsman;**
**Kelly Gene Richardson;**
**Theodore Hyun Dokko;**
**Jonathan Robert Davis;**
**Richardson, Harman, Ober PC;**
**Arthur Kenneth Cunningham;**
**Stephanie Joy Tanada;**
**Lewis Brisbios Bisgaard & Smith LLP;**
**John Devlon Molloy;**
**Craig Grant Riemer;**
**Edward T. Webster;**
**James H. Hamlin;**
**Roes 1-10,**
Individually, Jointly, Jointly and Severally,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: EDCV-16-00370 VAP (SP)

**PLAINTIFF'S REPLY TO, AND**
**OPPOSITION TO MAY 17, 2016, ORDER**
**TO SHOW CAUSE (FILED**
**CONCURRENTLY WITH REQUEST FOR**
**JUDICIAL NOTICE)**

Date: July 7, 2016
Time:
Hon.: Pym
Dept.: 3 or 4

Aristea Hupp; Paul Hupp
Case No.: EDCV-16-00370

Defendants.                          )
_____)

# I
## Introduction

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE SHERI PYM ("PYM"):

Plaintiffs Aristea Hupp ("AHUPP") and Paul Hupp ("PHUPP" (collectively "Plaintiffs")) hereby file their reply, and opposition, to the Court's <u>May 17, 2016</u>, Order to Show Cause ("OSC").

# II
## Memorandum of Points and Authorities

### 1. "Compilation of Record"

### 1A. PYM'S OSC Lacking in Both Facts and Law

On <u>May 17, 2016</u>, PYM filed the instant OSC. PYM referenced the instant case and a prior case that "made identical allegations" in case EDCV-15-1693 VAP (SP). This is patently incorrect, and the *first* of *numerous* misstatements of facts *and* law in the PYM'S OSC. Although many of the prior state allegations were the same, the federal allegations were entirely different. In addition, there were numerous additional state allegations that were added to the instant action that were not in the prior action. PYM'S failure to properly state the background facts are consistent throughout the entire OSC, and buttresses PYM'S bias and misconduct in pursuing the OSC.

PYM notes that the prior action, and a third (3) action against Solera Oak Valley Greens Association ("SOLERA") EDCV-14-1303 VAP (SP), was dismissed without leave to amend. PYM then states that the instant action was "no different" than the prior two (2) and dismissed without leave to amend. What PYM fails to state, intentionally, is that the instant case is under

reconsideration and subject to appeal, as well as case EDCV-14-1303 VAP (SP). Both cases have valid issues to be considered on appeal.

Next PYM references a search of PHUPP on the Public Access to Court Electronic Records ("PACER") database from *2007*. Not from 2003 when PHUPP filed his first federal complaint, but from *2007*. PYM states PHUPP has filed 21 "lawsuits" in the United States District Court for the Central District of California. Once again PYM misstates both the facts and the law. Four (4) of the actions filed were *Habeas Corpus Petitions*. *Habeas Corpus Petitions* are not "lawsuits". Two (2) of the *Habeas Corpus Petitions* were identical as PYM dismissed the first two (2) *Habeas Corpus Petitions* under the specious claim they could not go forward as the pending restrictions on PHUPP'S liberty were not present at the time the *Habeas Corpus Petitions* were filed. PYM'S legal analysis was faulty, as it has been numerous times, but to avoid a long and drawn out appeal that could interfere with the *Habeas Corpus Petitions* PHUPP refiled both. PYM dismissed both and both are now on appeal to the Ninth Circuit. PYM then claims that the "majority of Hupp's cases have been dismissed with prejudice, leading Hupp to refile dismissed claims with either minimal changes or none at all."

PYM does not cite to any facts whatsoever to back this statement up except for two (2) cases, CV-09-2052 and EDCV- 10-413, but both of these cases had already been subject to a "vexatious litigant" orders. *Both* orders were "narrowly tailored". Maybe even more importantly is the fact that these cases were six (6) and seven (7) years removed from PYM'S OSC. PYM is therefore citing to cases that are so far removed from the OSC that one can easily presume that PYM'S OSC is just **pretext** to stop PHUPP from filing actions against PYM'S; 1) friends, 2) and people who are politically connected to *both* PMY and United States District Court Judge Virginia Anne Phillips ("PHILLIPS").

PYM then claims that the most "recent filings take a similar pattern".  One again, without going into the law, the facts stated by PYM are 100% wrong.

Particularly troubling with PYM'S list of cases is that the exact same "vexatious litigant" motion that PYM is now bringing as an OSC was filed <u>April 27, 2012</u>[1], against PHUPP by Cheryl Brierton, a supervising Deputy Attorney General ("DAG") for the State of California, before Presiding United States District Court Judge for the Southern District of California, Judge Irma E. Gonzalez. Judge Gonzalez refused to make the "finding" requested by the DAG, that PHUPP was a "vexatious litigant". In fact Judge Gonzalez would not even make the finding that the statements in the referenced cases are factually true;

> "However, the Court only takes judicial notice of the existence of these documents [court cases cited by DAG to support a finding of *"vexatious litigant" order*] and the statements made in the documents, and not the truth of their contents." *See* <u>Hupp v. San Diego County District Attorney et al</u>, Case No.: 12-cv-492 IEG (RBB), Docket #35, P.2, Footnote 1, dated <u>June 4, 2012</u>.

PYM knows this. More troubling is that these facts have been made to PYM numerous times in the past, as recently as <u>July 7, 2015</u>, and she is on notice and aware of them. *See* <u>Hupp v. Hubbs et al</u>, PHUPP'S "Omnibus *Ex Parte* Application" dated <u>July 7, 2015</u>.

**First**, no SOLERA defendant was named in any of the federal actions in EDCV-14-1303. The only named defendants in that action were Jack Huntsman ("HUNTSMAN"), a City of Beaumont employee, and Christine Rodgers ("RODGERS"), who was named individually and is not an employee of SOLERA. The claims in that action against SOLERA and SOLERA Board members were all state claims, and they had no ruling on the merits whatsoever. The conditions under which HUNTSMAN and RODGERS were dismissed are subject to interpretation and are also subject to appeal. Neither are final rulings on the merits as to the federal actions. As neither

---

[1] *See* <u>Hupp v San Diego County et al</u>, 12-cv-492, Docket #24.

HUNTSMAN nor RODGERS are SOLERA "defendants" PYM is factually wrong in claiming that this case was ruled on the merits with regard to SOLERA in any manner whatsoever. This will be a common occurrence by PYM in her "analysis" of both the facts *and* the law.

**Second**, the federal action in EDCV 15-1693 was based on the "Fair Credit Reporting Act, 15 U.S.C. §1681 ("FCRA"). The state actions in that case, as in EDCV-14-1303, were never ruled on. There is some issue of disagreement as to whether the FCRA would view SOLERA as a form of "government". Under California law, the "Davis-Stirling Act", Common Interest Developments ("CID"), which SOLERA is, are viewed as "governments" and carry many of the exact same duties and powers.

**Third**, the federal action in ED CV16-370, the instant action, was likewise not "identical" to either EDCV-14-1303 or EDCV 15-1693. This action was based on violations of the First and Fourteenth Amendments. The Riverside Superior Court has a "blanket ban" on PHUPP from filing any action whatsoever in the state court. This is a clear violating of both the First and Fourteenth Amendments.

### 1B. PYM Has No Legal Authority to Make Any "Vexatious Litigant" Finding of Fact for Any Case Prior to June 4, 2012

Presiding United States District Court Judge for the Southern District of California, Judge Irma E. Gonzalez, denied making a finding of fact that PHUPP a "vexatious litigant" on all of the cases cited by PYM prior to June 4, 2012. Those cases are now settled law. Issue and claim preclusion stop PYM from "re-litigating" them a second (2) time, for her own personal vendetta against PHUPP.

PYM is not an appellate court. PYM has no legal authority to over rule a *Presiding Judge*, Judge Gonzalez. Judge Gonzalez' finding of facts and refusal to label PHUPP a "vexatious litigant" is binding on PYM and all other judges.

According to PYM'S OSC "Exhibit B" that leaves a total of 13 cases[2] in the Central District, starting July 31, 2013, 13-CV-1320 and ending March 1, 2016, the instant case. Of those 13 cases four (4), 33%, are *Habeas Corpus Petitions,* which in reality are really only two (2) *Habeas Corpus Petitions* due to PYM'S rulings, cited *supra,* that the first two (2) could not be filed as the restriction of liberty was not in place when the two (2) were filed. Both are on appeal. One (1) case, EDCV-14-1303 is active/pending. One (1), the instant case, has a pending motion for reconsideration and will be appealed if reconsideration is denied. One (1) EDCV-14-2560[3], was the subject of extreme judicial abuse by PYM and PHILLIPS and is also pending appeal. One (1), EDCV-14-1223, was successfully litigated. One (1) case, EDCV-14-576, is pending. Of the 13 cases filed in the Central District since July 31, 2013, 10[4] (77%) of them have either settled favorably to PHUPP, or are pending appeal.

**1C. PYM'S OSC Lacking in Both Facts and Law**

As stated *supra,* the three (3) cases PYM claims are "identical"; EDCV-14-1303 (unlawful search in violation of Fourth Amendment against RODGERS), EDCV-15-1693 (FCRA against SOLERA) and EDCV-16-370 (violation of access to the courts and due process

---

[2] Hupp v San Diego County et al, 12-cv-492, had one (1) successful action that reached settlement on December 10, 2012; the remaining actions are pending before the Ninth Circuit Court of Appeal. For the purposes of this OSC this case had a favorable conclusion and cannot be used to support PYM'S OSC.

[3] This case, Hupp v. Hubbs, was one of the most patently abusive rulings, by PYM, that PHUPP has ever seen in a federal court. Defendant Hubbs, as a private citizen, unlawfully ran a search of PHUPP'S, vehicle through government law enforcement and DMV databases. It was clear PYM either did not understand or know this was unlawful, or more likely did know and under understand such conduct was unlawful but dismissed the case to interfere with PHUPP'S valid, constitutionally protected rights under the First Amendment.

[4] As two (2) of the *Habeas Corpus Petitions* were refiled and both refiled cases are pending appeal, PHUPP'S position is that all four (4) are pending appeal as they are identical.

1    under First and Fourteenth Amendments against SOLERA) are not "identical", nor are they

2    even the same actions, contrary to PYM'S claims in her OSC.

3    **1D. PYM'S OSC Lack Backing by Relevant Law**

4    Also troubling from PYM is her claim that she can issue a "blanket ban" on filing a

5    federal case on not just PHUPP, but also AHUPP. AHUPP has filed a total of four (4) federal

6    lawsuits, of which half are still pending adjudication or appeal. It is such an absurd showing of

7    bias it boggles the mind.

8    First, there is no question whatsoever that federal courts have the power to make any

9    person subject to a "pre-filing order", but there are several conditions that must be met and the

10   order must be "narrowly tailored". In only the most abusive and rarest of cases should a blanket

11   "pre-filing order" be established on any person, and it must be fully documented. *See* De Long v.

12   Hennessey, 912 F.2d 1144, 1147 (9th Cir. 1990); Molski v. Evergreen Dynasty Corp., 500 F.3d

13   1057 (9th Cir. 2007)[5]. These are extreme remedies and should rarely be used since such sanctions

14   can tread on the litigants constitutionally protected due process rights under the Fifth

15   Amendment. Of course the irony of this OSC is that it revolves around the instant case, which is

16   over a state court blocking access to the courts in the case of PHUPP, and denying due process

17   rights by the state court by holding an *ex parte* hearing and dismissing the subject case of

18   AHUPP; when AHUPP was not noticed, was not served any of the moving papers and was not

19   present to present counter argument at the hearing. A hearing that was held with less than 13

---

[5] Molski quoted five (5) factors to make a determination for a "vexatious litigant" and the requirement of a "pre-filing order" from a case from United States Court of Appeals for the Second Circuit; Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2d Cir.1986). Those factors are: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing, or duplicative suits; (2) the litigant's motive in pursuing the litigation, for example, whether the litigant had a good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused unnecessary expense to the parties or placed a needless burden on the courts; and (5) whether other sanctions would be adequate to protect the courts and other parties. These are the factors used in the Ninth Circuit.

Aristea Hupp; Paul Hupp
Case No.: EDCV-16-00370

hours notice to AHUPP. It is truly ironic that PYM and PHILLIPS are having an OSC in this case under these circumstances. But make no mistake, federal law is diametrically opposite of state law and Cal. Civ. Pro. Code §391 ("vexatious litigant"). Under *federal* law the criteria to make a "vexatious litigant" finding is much *narrower*. And the definition of "vexatious litigant" in *federal* law is likewise much different than under state law Civ. Pro. Code §391. That standard under *federal* law is much more stringent. Federal courts have that inherent power to sanction parties for improper conduct. *See* Chambers v. Nasco Inc., 501 U.S. 32, 43-46 (1991); Roadway Express, Inc., v. Piper, 447 U.S. 752, 766 (1980); Fink v. Gomez, 239 F.3d 989, 991, (9th Cir. 2001). The "inherent power" of the federal court is discretionary, but does have limits. Fink, at 992 (quoting from Chambers, 50 U.S. at 46-47). However, in order for any federal court to sanction a person under their "inherent powers" there must be a specific finding of "bad faith or conduct tantamount to bad faith". Fink, at 994. Mere "recklessness", alone, is not enough. "Recklessness" must be combined with "…an additional factor such as frivolousness, harassment, or improper purpose". Fink, at 993-94. In the instant case the sole reason AHUPP and PHUPP refiled their case from state court in federal court alleging violation of constitutionally protected rights under the First and Fourteenth Amendments was because of the conduct of the SOLERA defendants and the state court; refusing to allow PHUPP to litigate a valid case and then dismissing AHUPP'S case with no notice nor opportunity to be heard. This was clearly improper, and the fact this court did not even address the issue of PHUPP not being allowed to be a part of the litigation buttresses Plaintiffs claims that this court is playing politics in this action. The court's inherent power *must* be exercised with restraint and caution. Chambers, 501 U.S. at 44. Once again, noting the differences between *federal* law and Civ. Pro. Code §391, "litigiousness" alone is insufficient to support a finding of vexatiousness. *See* Moy v.

Aristea Hupp; Paul Hupp
Case No.: EDCV-16-00370

United States, 906 F.2d 467, 470 (9th Cir. 1990). In the case of AHUPP one can hardly call the filing of four (4) federal claims, two (2) of which are pending or on appeal, "vexatious". In the case of PHUPP one can hardly call the filing of thirteen (13) federal claims, ten (10) of which ended either favorably, or are pending or on appeal, "vexatious". Under *federal* law the focus is not on the number of actions, or whether such actions were adversely decided, the focus is on whether the *federal* actions that were filed were *frivolous* or *harassing* in nature. In the OSC PYM has focused solely on the number of actions filed and the outcome. PYM does not analyze a single case of either Plaintiff, outside of her incorrect analysis of the three (3) cases she claims were "identical" and involved "Solera". Under federal law PYM'S OSC lacks substantial factual, and legal, analysis;

> "...before a district court issues a pre-filing injunction against a pro se litigant, it is incumbent on the court to make substantive findings as to the frivolous or harassing nature of the litigants actions." *See* De Long, 912 F.2d at 1147-48.

Here PYM has made no such findings; all PYM has done is make incorrect factual claims to three (3) cases, just THREE (3), that she claims are "identical", which is clearly incorrect.

Losing a case for failing to exhaust administrative remedies does not demonstrate any malicious, frivolous or vexatious intent. Nor does losing a case on a summary judgment motion, or having a *Habeas Corpus Petitions* denied, which PYM'S OSC implies if not out right state it.

## 1E. PYM Cannot Use Any Papers "Brought to the Court's Attention"

Also troubling from PYM is her claim that she is using "...relevant portions of Paul Hupp's and Aristea Hupp' state court litigation". Just as in the state court action that is the subject of this federal action, neither AHUPP nor PHUPP, have had any opportunity whatsoever to address any paper by any defendant that has been filed in this action. Essentially what PYM is doing is taking, improperly, "judicial notice" of what the various defendants have filed, which

Aristea Hupp; Paul Hupp
Case No.: EDCV-16-00370

neither Plaintiff has any idea as to what PYM is referring to because she makes no citation to her

claim of "relevant portions" of defendants papers. This, as with the OSC and the state court

action of dismissing a case *ex parte* without notice or opportunity to be heard, is unlawful and

violates due process of law. It also show the depths and extent that PYM and PHILLIPS will go

to game the facts and law. The bias of PYM and PHILLIPS is legion.

### 1F. First, Fifth and Fourteenth Amendment Provides Constitutionally Protected Right of Access to Federal and State Courts

The First and Fourteenth Amendments provide constitutionally protected rights of access

to state courts and due process of law. *See* <u>Bounds v Smith</u>, 430 U.S. 817 (1977). The First and

Fifteenth Amendments do the same for federal courts. The state court denied both PHUPP and

AHUPP these rights. It denied PHUPP'S constitutionally protected rights of access to the courts

and due process of law when the state court judge refused to allow PHUPP to be a co-plaintiff

with AHUPP in the state court action that is the subject of this federal action (case RIC-

1512779). There was no issue in RIC-1512779 that was meritless, frivolous or harassing, and the

state court judge that denied PHUPP the right to be a plaintiff n that action made no finding of

fact whatsoever that it was. The state court judge simply refused to allow PHUPP to be a litigant.

This is a clear violation of constitutionally protected rights of access to the courts and due

process of law. The state court then violated AHUPP'S constitutionally protected rights of access

to the courts and due process of law by dismissing her case, which had been pending since

<u>October 23, 2015</u>, on an *ex parte* motion without notice or opportunity to be heard. Only after

these actions was the instant case filed. And yet again in the court's order dismissing the instant

action PHILLIPS cites to papers filed by the various defendants to support her dismissal, papers

that cannot receive "judicial notice" without an opportunity to be heard on their validity and

reliability. Then PYM does the exact same thing in this OSC by citing to unidentified and

unknown papers from the various defendants without giving Plaintiffs the opportunity to object to them. In *arguendo*, it is impossible to object when PYM does not even state on the record what she is citing or referring to.

### 1G. PYM has Repeatedly Shown Extreme and Severe Bias against Plaintiffs

PYM'S biased against both AHUPP and PHUPP is legion. Her penchant for staying involved with cases before her while allowing personal friends to be the counsel of record is equally troubling. And there is no shortage of examples of PYM making favorably rulings for her personal friends, such Dennis Wagner who represented two (2) defendants in Hupp v. Diaz et al, EDCV-14-2559 when Wagner filed a 12(b)(6) motion to dismiss without first "meeting and conferring" with AHUPP under Local Rule (:LR") 73. Despite Wagner clearly violating the LR, PYM did not dismiss Wagner's motion, and worse she did not sanction Wagner for not complying with the LR. It was a pattern and practice that PYM would repeat over and over again to the detriment of AHUPP and PHUPP. In an even more egregious example of PYM misconduct, in EDCV-14-1303 SOLERA attorney Kelly Richardson would knowingly, intentionally and willfully send legal papers to the wrong address. The one and only address of record for AHUPP, and both Plaintiffs, is 965 Hidden Oaks Drive, Beaumont, CA 92223. There is no other address on any document in this or any other case, in the Clerk's Office or anywhere else. The address is listed on the face page of every single document filed by Plaintiffs in this and every other case. The address is listed on the signature block, under BOTH Plaintiffs, of every single document filed by Plaintiffs in this and every other case. On three different occasions EDCV-14-1303 SLERA and their attorney of record Kelly Richardson either did not send their papers or sent them to the wrong address. The first time SOLERA and their law firm were ORDERED to serve BOTH Plaintiffs at the one and only address of record, 965Hidden

Oaks Drive. This was not a new or novel issue. Yet, SOLERA and their law firm repeatedly sent their papers to the wrong address and Plaintiffs had to continue to file ex parte applications to have the papers stricken with a request for sanctions or have them served to the correct address. In addition AHUPP personally delivered a letter to SOLERA'S lawyers on <u>January 26, 2016</u>, stating, for the fifth (5) time, *in writing*, her address of record was Hidden Oaks Drive. Yet SOLERA and their law firm continued to either not serve the papers at all or serve them at the wrong address. Not once did PYM sanction SOLERA and their law firm for their repeated misconduct. After SOLERA'S eighth (8) act of willful misconduct one would expect PYM to issue some sort of sanction for the misconduct, but one would be wrong to think that. PYM did not issue any sanction at any time against SOLERA or their law firm, despite this being the four (4) *ex parte* applications filed by Plaintiffs to strike and sanction SOLERA and their law firm for repeatedly engaging the misconduct. Instead PYM tried to justify each and every act of SOLERA and their law firm's meritless, frivolous and vexatious misconduct by some "excuse". One excuse was that the "court clerk" did not have the "address of record" in the CM/ECF system. This was, and is, pure nonsense;  all the filed documents had the address of record clearly on them; in addition to the numerous letters AHUPP personally served on SOLERA and their law firm stating her address of record. This continued on **eight (8) times** with SOLERA and their law firm. Plaintiffs filed motions to strike, and for sanctions, **four (4) times**. All were denied.

But by far the most telling act of PYM'S misconduct in this series of vexatious and meritless litigation by SOLERA and their law firm was when PYM fabricated the claim that the wrong address SOLERA and their law firm  were mailing their papers was an "address of record".  PYM fabricated that to protect SOLERA, plain and simple. On <u>March 7, 2016</u>, (Docket

#70) in PYM'S "Report and recommendation, PYM made the following, completely fabricated, statement;

> "On November 20, 2015, plaintiffs filed another ex parte application, this time seeking to strike the Solera defendants' November 13, 2015 reply because plaintiff Aristea Hupp did not receive her own copy of the reply, despite the Solera defendants' proof of service indicating plaintiff **Aristea Hupp was served by mail with the reply at one of her addresses of record…**". At P.3,L.11-13. Bold, underline added.

100% PYM fabrication. AHUPP does not now and has never in the past had any "address of record" except for 965 Hidden Oaks Drive. Yet there it is, **in PYM'S own words,** AHUPP has multiple addresses of record according to PYM.  PYM fabricated this falsehood to get the end result she wanted, to support her biased ruling in favor of SOLERA. It should be noted for the record that PYM never forced SOLERA to rectify their misconduct. This was, and is, typical of PYM and her conduct towards both Plaintiffs. PYM'S bias caused substantial harm to Plaintiffs in several ways, including but not limited to; 1) by failing to sanction SOLERA and their law firm for their willful misconduct which encouraged them to continue on with their misconduct; 2) Plaintiffs had to expend substantial time, energy, effort and money to respond to SOLERA and their law firm's misconduct. Plaintiffs had to spend time, energy and resources to keep responding to the meritless, frivolous and vexatious willful misconduct of SOLERA and their law firm's misconduct. This was typical of PYM and her bias against Plaintiffs.

## 2. "Substantive Findings of Frivolousness"

### 2A. Habeas Corpus Petitions

PYM'S bias goes into full swing and spin when she starts off her "Subsection D Substantive Findings of Frivolousness". PYM starts by stating that the 22 cases filed in the Central District are "relatively low". Compared to the 600 "boilerplate" cases filed in <u>Molski</u>, it

is not "relatively low", but borders on non-existent at 3.6%. In addition the cases filed in <u>Molski</u> were all identical "boilerplate" complaints;

"...boilerplate complaints might indicate an intent to harass defendants." <u>Molski</u>, at 1059.

But PYM is once again wrong in the number of filed cases, as ALL the cases filed before Presiding Judge Irma Gonzalez of the Southern District had been ruled on by Judge Gonzalez. PYM is not a super appellate court and PYM has not legal authority to over rule or re-litigate the findings of Judge Irma Gonzalez.

PYM'S use of *Habeas Corpus Petitions* are even more specious and outlandish than PYM'S use of the number cases that have already been litigated. As stated *supra*, of the four (4) *Habeas Corpus Petitions* in the Central District, they are in actuality only two (2), both of which PYM made "Report and Recommendations" on to dismiss them. Both are on appeal before the Ninth Circuit Court of Appeal.

## 2B. PYM has Not Reviewed ANY Case of PHUPP on the "Merits"

PYM'S bias once again goes unto overtime goes when she claims PHUPP'S;

"...Paul Hupp's individual **civil rights actions under §1983** have been dismissed after the parties reached settlements. *See* ...Paul Hupp v. Rhonda Kuehn Wagner, et al. No. ED CV 14-1223-CAS (PLA), docket nos. 27-28." **Bold added.**

Here we have a "Magistrate Judge", PYM, who is trying to make the claim that PHUPP, *and AHUPP* (who only has four (4) cases on record n federal court), are "vexatious litigants" that should be subjected to a "pre-filing order", who has not even taken the time to read the factual background of the small and limited cases filed that can be subject to the "vexatious litigant" analysis. As stated *supra*, <u>Hupp v. Kuehn</u> is not a;

"...**civil rights actions under §1983**..."

-14-                                                         Aristea Hupp; Paul Hupp
Case No.: EDCV-16-00370

It is a diversity case that was brought under 28 U.S.C. §1332. The <u>Kuehn</u> case is listed as #1 on PYM'S OSC "Exhibit A", and it states the subject matter jurisdiction in the fourth (4) column, "NOS", as "190". On the United States District Court, Central District of California Civil Cover Sheet (Form CV-71) under subsection "VIII Nature of Suit "Other Statutes"", "190" is the code for "Other Contract"; "Civil Rights" actions are listed under code "440". On the second page, page two (2), ¶10, of the <u>Kuehn</u> Complaint, it clearly states the action is brought;

> "10. This court has original jurisdiction of this action under the provisions of Title 28 of the United States Code, **Section 1332-Diversity.** The amount of the aggregated claims exceeds $75,000." *See* <u>Hupp v Kuehn et al</u>, EDCV-14-1223, First Amended Complaint, page two (2). Bold and underline added.

So it is painfully obvious that PYM **has not reviewed, even a cursory review**, the cases of either PHUPP or AHUPP; PYM has no idea or understanding of even the most basic issues of the cases; such as subject matter jurisdiction. Yet here PYM is trying to make the claim that PHUPP'S cases are "frivolous". The only "frivolous" issues from PYM are her OSC and fabrications of "facts"[6] in her rulings involving Plaintiffs that are designed to prejudice and dismiss Plaintiffs actions.

## 2C. "Patter of Harassment"

PYM'S next claim is that Plaintiffs cases show a "pattern of harassment". Here we have PYM take "judicial notice" of a state court ruling that PHUPP was determined to be a "vexatious litigant". As PYM knows from this action, that "vexatious litigant" was based on the rulings of Judge Gonzalez, which the state court judge just "re-litigated", which is unlawful. State court judges, like "Magistrate Judges" in federal court, are not super appellate courts that can "re-litigate" issues already decided. The cases used by the state court judge in making a ruling that PHUPP was a "vexatious litigant" were the exact same cases that Presiding United States District

---

[6] Such as the claim that AHUPP has two (2) "addresses of record.

Court Judge for the Southern District of California, Judge Irma E. Gonzalez denied <u>June 4, 2012</u>, in Case No.: 12-cv-492 IEG (RBB), Docket #35, P.2, Footnote 1. **So now we have a state court judge re-litigating motions that were already denied in federal court, and then PYM taking "judicial notice" of that ruling back in federal court.** For the record, the state court "appeal" was not denied, because it was never heard. The state District Court of Appeal refused to hear the case; that is not the same as a "denial". PYM'S analysis is once again lacking in both facts and law. And once again, as has happened on at least five (5) different occasions in this case, both PYM and PHILLIPS have taken "judicial notice" of issues that are subject to dispute and a violation of Fed. R. Evid. Rule 201. This "pattern and practice" of taking "judicial notice" of disputed issues is a perfect example of the extreme and intense bias Plaintiffs have been exposed to under PYM and PHILLIPS.

### 2D. Improper "Taking of Judicial Notice"

PYM'S improper "taking of judicial notice" in her OSC is legion. PYM has improperly taken "judicial notice" so many times in this OSC it is mind boggling. This includes a <u>February 10, 2016</u>, "minute order granting ex parte application for dismissal of the first amended complaint". This once again shows the PYM bias in full swing and operation. **First**, PYM does not have legal authority to take "judicial notice" of any issue subject to reasonable dispute. **Second**, PYM'S taking "judicial notice" of any of the claims made by any defendant, or Judge Molloy, in the state court action is subject to dispute. In fact this entire action itself revolves around these disputes. PYM can certainly take "judicial notice" of the fact that these papers are in the court records, what PYM cannot take "judicial notice" of is the truth, validity or reliability of these records. In addition the state court case in question is **not final**, and is on appeal; making

Aristea Hupp; Paul Hupp
Case No.: EDCV-16-00370

PYM'S action all the more specious. This includes all of the "judicial notice" claims by PYM on pages 8-9.

### 2E. Unlawful use of Civil Contempt Charges

As if all of the above is not enough to show PYM'S bias, PYM shows her ignorance of the law once again by referencing a "civil contempt" conviction in the San Diego County Superior Court. PYM cannot take "judicial notice" of any action that is *not* subject to appellate review, which includes state court civil contempt actions. PYM also seems to have missed the fact that the civil contempt conviction was the result of failure to turn over "exculpatory" fingerprint and DNA evidence. If PYM had performed even a cursory reviewed any of PHUPP'S cases, she would have read the background of the cases in the Southern District that dealt with these issues, in not one (1) but three (3) different cases, 11-cv-2909; 12-cv-492; and 12-cv-274. So now we have PYM not only using tainted state law cases, cases that cannot receive "judicial notice", hut we also have PYM using non-appealable civil contempt state court cases where the government withheld "exculpatory" fingerprint and DNA evidence. PYM'S bias is off the charts.

### 2F. PYM again "Fabricates" Facts

PYM'S bias is repeated time and again in her OSC. On page 10 of the OSC PYM states that:

> "Plaintiffs have also, unsuccessfully, tried to use this court to challenge the decisions and courtroom procedures of Superior Court judges in small claims and infraction cases."

To start, PHUPP has never used this federal court to challenge "...the decisions and courtroom procedures of Superior Court judges in small claims..." AHUPP has, but not PHUPP. PHUPP did bring an action against a state court judge who locked the doors to his public courtroom and prevented PHUPP from defending his case. And yes, "judicial immunity" was used to dismiss both actions. The fact that both cases were dismissed based on "judicial

immunity" in no way makes the cases meritless or frivolous, nor has PYM suggested such; PYM just tosses the cases in to try to support her woefully weak argument that is beset by PYM'S fabricated factual claims.

### 2G. Habeas Corpus Petitions

PYM then tries to use PHUPP'S four (4) *Habeas Corpus Petitions* as support for her OSC. As stated *supra*, PYM'S use of *Habeas Corpus Petitions* are even more specious and outlandish than PYM'S use of the prior cases that have already been litigated, and denied by Presiding United States District Court Judge, for the Southern District of California, Judge Irma E. Gonzalez, on June 4, 2012, under a previous "vexatious litigant" motion in federal court. As stated *supra*, of the four (4) *Habeas Corpus Petitions* in the Central District, they are in actuality only two (2), both of which PYM made "Report and Recommendations" to dismiss them. Both are on appeal before the Ninth Circuit Court of Appeal. Both are valid. As stated numerous times supra, having a *Habeas Corpus Petition* denied is not a factor that can support a "vexatious litigant" finding. PYM knows that, or should know it. And PYM'S dismissal of PHUPP'S *Habeas Corpus Petitions* are on appeal, they are not final and as such have no place in this OSC.

### 3. "Remaining Molski/Safir Factors"

### 3A. Number of Actions

PYM'S remaining factors under the Molski/Safir analysis shows bias as well. PYM *admits in her own words* that Plaintiffs filings are "relatively low in number". Bu then PYM goes on to state that these claims have imposed "substantial costs" on various defendants "many of whom are public entities." PYM'S use of the term "public entity" in support of her OSC once again shows bias. The question is not whether or not a defendant is a "public entity", it is whether Plaintiffs have a valid claim. Here the various defendants conspired to calendar and hear

an *ex parte* motion to dismiss AHUPP'S claims, without AHUPP: 1) receiving proper notice, 2) without being served the moving papers; 3) without being present; and 4) without any opportunity to respond. PYM'S entire OSC is devoid or reason, logic and most importantly legal authority and support that such a hearing does not violate constitutionally protected rights.

### "Pre-Filing Order"

### 3B. Pre-Filing Orders Must be "Narrowly Tailored", PYM Wants Blanket Ban

PYM'S OSC is lacking in virtually every aspect of the law. PYM'S use of "judicial notice" is 100% invalid and a violation of the FRE. PYM'S analysis of the Molski "vexatious litigant" factors are as far off base as they can get.

What PYM has suggested is a BLANKET PRE-FILING ORDER against AHUPP, who has just four (4) cases in federal court, two (2) of which are under reconsideration or subject to appeal; and PYM wants a BLANKET BAN on AHUPP from being able to file a federal action. It is a mind boggling abuse of power form a biased/and/or incompetent magistrate judge. If anything shows how absurd PYM'S OSC is it is this fact. A blanket ban, or as PYM calls it "pre-filing order", is not absurd. Given the facts of this case it is one of the most abusive and biased rulings PHUPP has ever seen in a federal court, and that includes numerous actions from PYM.

### 4. PYM'S Biased is Well Documented

### 4A. PYM and PHILLIP'S Biased Well Documented

PHUPP has documented PYM and PHILLIP'S bias, or incompetence, on numerous occasions. This includes dismissing a case under a FRCP Rule 56 Motion (by PYM) without documenting or compiling with the requirements of Rule 56. *See* Hupp v Hubbs, Central District case no. EDCV-14- 2560 (on appeal).

1    Numerous uses of "judicial notice" in violation of FRE Rule 201, as documented

2    throughout this OSC reply.

3        PYM'S fabrication of "facts" in support of her refusal to sanction various defendants in

4    motions/applications brought by Plaintiffs. This includes the claim that AHUPP has two (2)

5    addresses of record.

6    **4B. PYM'S Refuses to Disqualify Herself When Her Personal Friend, Dennis**

7    **Wagner, is Representing Defendants**

8        PYM is personal friends with Dennis Wagner ("WAGNER"), the lawyer for several

9    defendants in this action and in prior actions before PYM; yet PYM did not recuse herself from

10   hearing the actions despite this patently obvious conflict.

11       In addition PYM refused to Sanction WAGNER when he violated the local rules of

12   procedure. This was an ongoing trait for PYM, as SOLERA repeatedly sent their papers to the

13   wrong address, and even after three (3) applications by Plaintiffs to sanction SOLERA and their

14   lawyers PYM would just keep fabricating reasons not to sanction, including the fabricated lie

15   that AHUPP had two (2) addresses of record.

16   **4C. PYM is Engaging in *Ex Parte Communications* with Defendants and their**

17   **Lawyers**

18       Plaintiffs are convinced beyond any doubt whatsoever that PYM is engaging in *ex parte*

19   communications with WAGNER and possibly all the lawyers for the various defendants.

20   SOLERA and their law firm made two (2) very public and unwarranted statements that indicated

21   this court would order that AHUPP and PHUPP be declared "vexatious litigants";

22

23       **"Solera expects that both Hupps will be declared vexatious litigants in the United**
     **States Courts."** *See* accompanying Request for Judicial Notice, Exhibits #1 and #2. Bold
24   added.

25

Aristea Hupp; Paul Hupp
Case No.: EDCV-16-00370

1        This statement was posted on a public SOLERA internet cite on <u>June 23, 2016</u>, and again

2   in a SOLERA magazine, "The Gazette", published and distributed on or around <u>July 1, 2016</u>. A

3   lawyer with just a scintilla of training knows that one can be held liable for publishing

4   defamatory, or even "false light", statements. Yet here SOLERRA and their law firm have made

5   extremely public, defamatory/false light statements. Why would they make such statements?

6   There is only one (1) possible answer, PYM is engaging in *ex parte* communications with

7   WAGNER at a minimum, but most likely all the lawyers for the various defendants as we

8   already know PYM is personal friends with at least WAGNER, but it is likely PYM knows all

9   the defendant judges.

10

11   **III**
**<u>Conclusion</u>**

12

13        The misconduct of the PYM is legion. PYM and PHILLIP'S improper use of "judicial

14   notice" in the order to dismiss and this OSC are wide ranging and extreme. PYM'S failure to

15   acknowledge that Presiding Judge Irma Gonzalez of the Southern District denied the vast

16   majority of the cases PYM has used to support her OSC buttresses PYM'S bias, or

17   incompetence. PYM and PHILLIPS failure to acknowledge that the Riverside Superior Court has

18   a BLANKET BAN on PHUPP from litigating valid cases is proven by the fact that the <u>KUEHN</u>

19   case was deemed to be "meritless/frivolous" by the Riverside Superior Court and PHUPP was

20   denied the right to file it. Yet the <u>KUEHN</u> case had already been litigated on the merits, and won

21   by PHUPP in federal court, proving up that the Riverside Superior Court is banning PHUPP

22   from filing valid cases in direct violation of the First and Fourteenth Amendments. And for

23   PYM'S curiosity, the <u>KUEHN</u> case survived multiple attempts to dismiss. PYM and PHILLIPS

24   failure to even address the Riverside Superior Court's BLANKET BAN on PHUPP from filing

25

Aristea Hupp; Paul Hupp
Case No.: EDCV-16-00370

cases is patently obvious that they are violating PHUPP'S constitutionally protected rights. PYMS fabricated claim that the three (3) recent cases of AHUPP against "SOLERA" are "identical" is facially false.

And last, it is very clear that PYM has not made any substantive inquiry, or even a cursory inquiry, into the cases of PHUPP as evidenced by PYM'S claim that the <u>KUEHN</u> case is a "civil rights case".

The OSC is simply an attempt by PYM and PHILLIPS to try to silence AHUPP and PHUPP'S constitutionally protected rights to: 1) freedom of speech; 2) access to the courts; and 3) the right to due process of law. It is shameful conduct, but it is conduct PHUPP has come to expect of both PYM and PHILLIPS.

Respectfully submitted.

Dated this 14th day of July, 2016

<u>/s/ Aristea Hupp</u>
Aristea Hupp
965 Hidden Oaks Drive
Beaumont, CA 92223
951-769-1268
*In Propria Persona*

<u>/s/ Paul Hupp</u>
Paul Hupp
965 Hidden Oaks Drive
Beaumont, CA 92223
951-769-1268
<u>Paulhupp@Gmail.com</u>
*In Propria Persona*

1    Paul Hupp
     965 Hidden Oaks Drive
2    Beaumont, CA. 92223
     *In Propria Persona*
3

LODGED
CLERK, U.S. DISTRICT COURT

AUG 1 7 2020

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

4                    UNITED STATES DISTRICT COURT

5                    CENTRAL DISTRICT OF CALIFORNIA

6

7    Paul Hupp,                              )
                                             )
8              Plaintiff,                     )
                                             )
9              v.                            )     Case No.: CV-20-
                                             )
10   Rebecca Lynn Dugan,                      )
     John Washburne Vineyard,                 )    **PLAINTIFF PAUL HUPP'S REQUEST TO**
11   Leslie Irene Ryder, A/K/A Leslie Irene Hupp; )  **FILE NEW LITIGATION**
     Lisa Martinez Shiozaki;                  )
12   Kellen S. Stevens;                       )
     Dennis M. Sandoval;                      )
13   De La Housaye & Associates,  A Law       )
     Corporation;                             )
14   Roes 1-10;                               )
     Individually, Jointly, Jointly and Severally, )
15                    Defendants.             )
                                             )
16                                            )
                                             )
17                                       **I**
                                    **Introduction**
18

19        To the United States District Court for the Central District of California ("COURT"),

20   Plaintiff Paul Hupp ("PHUPP") HEREBY Files "Request to File New Litigation".

21                              Dated this 10th day of August, 2020

22                              /s/ Paul Hupp
                                Paul Hupp
23                              965 Hidden Oaks Drive
                                Beaumont, CA. 92223
24                              *In Propria Persona*

25

                                      -1-                    Paul Hupp

1  Paul Hupp
   965 Hidden Oaks Drive
2  Beaumont, CA. 92223
   *In Propria Persona*
3

4                                          UNITED STATES DISTRICT COURT

5                                          CENTRAL DISTRICT OF CALIFORNIA

6

7                                          )
                                           )
8  Paul Hupp,                              )
                                           )
9            Plaintiff,                     )
                                           )   Case No.: CV-20-
10           v.                             )
                                           )
11 Rebecca Lynn Dugan,                      )
   John Washburne Vineyard,                 )   **PLAINTIFF PAUL HUPP'S NOTICE OF**
12 Leslie Irene Ryder, A/K/A Leslie Irene Hupp; ) **MOTION AND MOTION FOR LEAVE OF**
   Lisa Martinez Shiozaki;                  )   **COURT TO <u>TEMPORARILY</u> FILE CASE**
13 Kellen S. Stevens;                       )   **PAPERS <u>UNDER SEAL</u>; DECLARATION**
   Dennis M. Sandoval;                      )   **OF PAUL HUPP IN SUPPORT**
14 De La Housaye & Associates, A Law        )
   Corporation;                             )
15 Roes 1-10;                               )
   Individually, Jointly, Jointly and Severally, )
16           Defendants.                    )
                                           )
17                                          )

18                                          <u>I</u>
                                      <u>Introduction</u>
19

20       Plaintiff Paul Hupp ("PHUPP"), in *Propria Persona*, files this Notice of Motion and

21 Motion ("MOTION") for Leave of Court to *temporarily seal* the case documents, including but

22 not limited to case initiating documents, support documents and the Emergency Ex Parte

23 Application documents. And that such documents be filed under seal, and remain under seal,

24 until defendants Rebecca Lynn Dugan ("DUGAN") and John Washburne Vineyard

25 ("VINEYARD") have been served notice.

-1-                          Paul Hupp

## II
## Argument

The Court has been filing copies of all civil matters that have been filed since <u>Hupp v</u> <u>Solera Oak Valley Greens Association et al</u>, Case No.: EDCV-16-00370 VAP (SP), into the docket of that case, and notifying the attorneys of record in that case of such docket filings, including Dennis Earl Wagner (SBN# 99190) ("WAGNER") of the law firm Wagner and Pelayes, LLP[1], the attorney that represented Riverside Superior Court Judges John Devlon Molloy, Craig Grant Riemer and Edward T. Webster. Once WAGNER was notified he in turn would advise his clients, and associates of his clients, who were named defendants. This created a bias against PHUPP because WAGNER and his clients/client associates would then take actions to evade, elude and avoid incriminating actions and misconduct they were predisposed to engage in by cleverness and trickery. That has happened prior, and will likely happen in this action if the initiating papers are not filed under seal. It is also very probable that WAGNER will represent DUGAN and VINEYARD in this matter. Once DUGAN and VINEYARD have been served process the Court can unseal all documents previously filed under seal.

## III
## Conclusion

PHUPP prays the Court GRANT his *temporary* request because the effort to file the papers temporarily under seal is minimal, while the damage to PHUPP that would be created by WAGNER giving advance notice to DUGAN and VINEYARD would/could cause substantial harm to PHUPP and his action.

---

[1] Wagner is now employed by Wagner Zemming Christensen, LLP.

## **Declaration**

I, **Paul Hupp**, the above-entitled Plaintiff, declare the following;

1. I have personal knowledge of all facts stated herein.

2. If called to testify to these facts I would and could competently testify to such in a court of competent jurisdiction.

3. In previous papers lodged/filed with this Court, copies were placed on the docket of <u>Hupp v Solera Oak Valley Greens Association et al</u>, Case No.: EDCV-16-00370 VAP (SP), and WAGNER was notified.

4. WAGNER in turn would notify his clients at the Riverside Superior Court, and associates of his clients, either directly by himself or indirectly by his clients notifying their associates.

5. Such notifications created a bias against PHUPP because it allowed WAGNER and his clients/client associates to take actions to evade, elude and avoid incriminating actions and misconduct they were predisposed to engage in by cleverness and trickery.

6. DUGAN and VINEYARD are associates of WAGNER clients.

7. Sealing of the record would be *temporary* and would cease once DUGAN and VINEYARD are served.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct except for those portions based on information and belief and for those portions I believe them to be true.

Executed at: Beaumont CA, on <u>August 10, 2020</u>.

Respectfully Submitted.

Dated this 10th day of August, 2020

/s/ Paul Hupp
Paul Hupp
965 Hidden Oaks Drive
Beaumont, CA. 92223
*In Propria Persona*

-4-                    Paul Hupp

Paul Hupp
965 Hidden Oaks Drive
Beaumont, CA 92223

LODGED
CLERK, U.S. DISTRICT COURT

AUG 17 2020

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION     BY DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Paul Hupp | CASE NUMBER |
| | 20-CV- |
| PLAINTIFF/PETITIONER, | |
| v. | |
| Rebecca Lynn Dugan et al | **REQUEST TO PROCEED** |
| See Attached Facepage | **IN FORMA PAUPERIS WITH** |
| DEFENDANT(S). | **DECLARATION IN SUPPORT** |

I, Paul Hupp_____, declare under penalty of perjury, that the foregoing is true and correct; that I am the petitioner/plaintiff in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs or give security therefore, I state that because of my poverty I am unable to pay the costs of said proceedings or to give security therefore and that I am entitled to redress.

I further declare under penalty of perjury that the responses which I have made to the questions and instructions below are true, correct and complete.

1.  Are you presently employed?  ☐Yes  ☑No

   a.  If the answer is yes, state the amount of your salary or wages per month, and give the name and address of your

      employer. _____

   b.  If the answer is no, state the date of last employment and the amount of the salary and wages per month which

      you received. August 8-2010, washed neighbors car, $25

2.  Have you received, *within the past twelve months*, any money from any of the following sources?

   a.  Business, profession or form of self-employment?   ☐Yes   ☑No
   b.  Rent payments, interest or dividends?   ☐Yes   ☑No
   c.  Pensions, annuities or life insurance payments?   ☐Yes   ☑No
   d.  Gifts or inheritances?   ☐Yes   ☑No
   e.  Any other income (other than listed above)?   ☐Yes   ☑No
   f.  Loans?   ☑Yes   ☐No

   If the answer to any of the above is yes, describe such source of money and state the amount received from each

   source during the past twelve (12) months:  Borrowed $1200 from neighbor to pay various (including utility) bills

3. Do you own any cash, or do you have money in a checking or savings account?  (Include any funds in prison accounts, if applicable.)  ☐Yes   ☑No

   If the answer is yes, identify each account and separately state the amount of money held in **each** account for each of the *six (6) months prior* to the date of this declaration.

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?  ☑Yes   ☐No

   If the answer is yes, describe the property and state its approximate value: _____

   Own 1986 Nissan Truck- $500

5. In what year did you last file an Income Tax return? 2010

   Approximately how much income did your last tax return reflect? $5,000

6. List the persons who are dependent upon your for support, state your relationship to those persons, and indicate how much you contribute toward their support:

   Just myself and my recue animals

I understand that a false statement or answer to any question in this declaration will subject me to penalties for perjury.  I further understand that perjury is punishable by a term of imprisonment of up to five (5) years and/or a fine of $250,000 (18 U.S.C.  Sections  1621, 3571).

| CA | Riverside |
|---|---|
| State | County (or City) |

I, Paul Hupp _____, declare under penalty of perjury that the foregoing is true and correct.

8- 10- 2020
_____                          _____
Date                                     Plaintiff/Petitioner (Signature)

Paul Hupp
965 Hidden Oaks Drive
Beaumont, CA. 92223
*In Propria Persona*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Paul Hupp,                                                    )
)
Plaintiff,                            )
)
v.                              )   Case No.: CV-20-
)
Rebecca Lynn Dugan,                        )   **PLAINTIFF PAUL HUPP'S**
John Washburne Vineyard,                  )   **EMERGENCY *EX PARTE* APPLICATION**
Leslie Irene Ryder, A/K/A Leslie Irene Hupp;  )   **PURSUANT TO LOCAL RULE 7-19;**
Lisa Martinez Shiozaki;                    )   **POINTS AND AUTHORITIES;**
Kellen S. Stevens;                         )   **DECLARATION IN SUPPORT**
Dennis M. Sandoval;                        )
De La Housaye & Associates,  A Law        )   Time: 9:00 AM
Corporation;                               )   Date: August 19, 2020
Roes 1-10;                                 )   Courtroom:
Individually, Jointly, Jointly and Severally,  )   Judge:
Defendants.                   )
)
)
)

**I**
**Introduction**

To the United States District Court for the Central District of California ("COURT"),

Defendants Rebecca Lynn Dugan ("DUGAN"), John Washburne Vineyard  ("VINEYARD")

Leslie Irene Ryder, A/K/A Leslie Irene Hupp ("RYDER"); Lisa Martinez Shiozaki

("SHIOZAKI"); Kellen S. Stevens ("STEVENS"); Dennis M. Sandoval ("SANDOVAL"); De

La Housaye & Associates, A Law Corporation ("DLHA") and Roes 1-10 ("ROES") (collectively

"DEFENDANTS") and all other parties of interest, pursuant to Local Rule 7-19, Plaintiff Paul

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Paul Hupp
965 Hidden Oaks Drive
Beaumont, CA 92223

**DEFENDANTS**
Rebecca Lynn Dugan et al
See Attached Facepage

**(b)** County of Residence of First Listed Plaintiff   Riverside
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Riverside
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Paul Hupp
965 Hidden Oaks Drive
Beaumont, CA 92223

Attorneys *(If Known)*
UKN

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability |  |  | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability |  | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine |  | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability |  | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **PRISONER PETITIONS** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 463 Alien Detainee | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 510 Motions to Vacate Sentence | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | **IMMIGRATION** | |
| | ☐ 448 Education | **Other:** | ☐ 462 Naturalization Application | |
| | | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC Section 1983
Brief description of cause:
Violations of, inter alia, First Amendment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
08/10/2020

SIGNATURE OF ATTORNEY OF RECORD
*Paul [signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG JUDGE _____

Paul Hupp
965 Hidden Oaks Drive
Beaumont, CA. 92223
*In Propria Persona*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Paul Hupp,<br><br>      Plaintiff,<br><br>      v.<br><br>Rebecca Lynn Dugan,<br>John Washburne Vineyard,<br>Leslie Irene Ryder, A/K/A Leslie Irene Hupp;<br>Lisa Martinez Shiozaki;<br>Kellen S. Stevens;<br>Dennis M. Sandoval;<br>De La Housaye & Associates,  A Law<br>Corporation;<br>Roes 1-10;<br>Individually, Jointly, Jointly and Severally,<br>      Defendants. | Case No.: CV-20-<br><br>**PLAINTIFF PAUL HUPP'S<br>EMERGENCY *EX PARTE* APPLICATION<br>PURSUANT TO LOCAL RULE 7-19;<br>POINTS AND AUTHORITIES;<br>DECLARATION IN SUPPORT**<br><br>Time: 9:00 AM<br>Date: August 19, 2020<br>Courtroom:<br>Judge: |

# I
## Introduction

To the United States District Court for the Central District of California ("COURT"),

Defendants Rebecca Lynn Dugan ("DUGAN"), John Washburne Vineyard  ("VINEYARD")

Leslie Irene Ryder, A/K/A Leslie Irene Hupp ("RYDER"); Lisa Martinez Shiozaki

("SHIOZAKI"); Kellen S. Stevens ("STEVENS"); Dennis M. Sandoval ("SANDOVAL"); De

La Housaye & Associates, A Law Corporation ("DLHA") and Roes 1-10 ("ROES") (collectively

"DEFENDANTS") and all other parties of interest, pursuant to Local Rule 7-19, Plaintiff Paul

NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY(S)
OR OF PARTY APPEARING IN PRO PER
PPaul Hupp
965 Hidden Oaks Drive
Beaumont, CA 92223

LODGED
CLERK, U.S. DISTRICT COURT

AUG 17 2020

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

ATTORNEY(S) FOR: Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Paul Hupp | CASE NUMBER: |
| | 20-CV- |
| Plaintiff(s), | |
| v. | |
| Rebecca Lynn Dugan et al | **CERTIFICATION AND NOTICE** |
| See Attached Facepage | **OF INTERESTED PARTIES** |
| | **(Local Rule 7.1-1)** |
| Defendant(s) | |

TO:     THE COURT AND ALL PARTIES OF RECORD:

The undersigned, counsel of record for                              Paul Hupp
or party appearing in pro per, certifies that the following listed party (or parties) may have a pecuniary interest in
the outcome of this case.  These representations are made to enable the Court to evaluate possible disqualification
or recusal.

(List the names of all such parties and identify their connection and interest. Use additional sheet if necessary.)

| PARTY | CONNECTION / INTEREST |
|-------|----------------------|
| Paul Hupp | Plaintiff |

| | |
|---|---|
| August 10, 2020 | /s/Paul Hupp |
| Date | Signature |

Attorney of record for (or name of party appearing in pro per):

_____

1   Paul Hupp
    965 Hidden Oaks Drive
2   Beaumont, CA. 92223
    *In Propria Persona*
3

4              UNITED STATES DISTRICT COURT

5              CENTRAL DISTRICT OF CALIFORNIA

6

7                                    )
                                     )
8   Paul Hupp,                       )
                                     )
9            Plaintiff,              )   Case No.: CV-20-
                                     )
10                v.                 )   **PLAINTIFF PAUL HUPP'S**
                                     )   **EMERGENCY *EX PARTE* APPLICATION**
11  Rebecca Lynn Dugan,              )   **PURSUANT TO LOCAL RULE 7-19;**
    John Washburne Vineyard,         )   **POINTS AND AUTHORITIES;**
    Leslie Irene Ryder, A/K/A Leslie Irene Hupp; )  **DECLARATION IN SUPPORT**
12  Lisa Martinez Shiozaki;         )
    Kellen S. Stevens;              )
13  Dennis M. Sandoval;             )
    De La Housaye & Associates,  A Law )   Time: 9:00 AM
14  Corporation;                    )   Date: August 19, 2020
    Roes 1-10;                      )   Courtroom:
15  Individually, Jointly, Jointly and Severally, )  Judge:
               Defendants.          )
16                                   )
                                     )
17  _____)

18                      **I**
                   **Introduction**
19

20      To the United States District Court for the Central District of California ("COURT"),

21  Defendants Rebecca Lynn Dugan ("DUGAN"), John Washburne Vineyard  ("VINEYARD")

22  Leslie Irene Ryder, A/K/A Leslie Irene Hupp ("RYDER"); Lisa Martinez Shiozaki

23  ("SHIOZAKI"); Kellen S. Stevens ("STEVENS"); Dennis M. Sandoval ("SANDOVAL"); De

24  La Housaye & Associates, A Law Corporation ("DLHA") and Roes 1-10 ("ROES") (collectively

25  "DEFENDANTS") and all other parties of interest, pursuant to Local Rule 7-19, Plaintiff Paul

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| Paul Hupp | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) Civil Action No. 20-cv- |
| | ) |
| Rebecca Lynn Dugan et al | ) |
| See Attached Facepage | ) |
| | ) |
| | ) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_   965 Hidden Oaks Drive
Beaumont, CA 92223

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Paul Hupp
965 Hidden Oaks Drive
Beaumont, CA 92223

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____         _____
_Signature of Clerk or Deputy Clerk_

1
2
3

Paul Hupp
965 Hidden Oaks Drive
Beaumont, CA. 92223
*In Propria Persona*

4              UNITED STATES DISTRICT COURT

5              CENTRAL DISTRICT OF CALIFORNIA

6

7

8

Paul Hupp,

    Plaintiff,

9

     v.

10

Rebecca Lynn Dugan,

11

John Washburne Vineyard,

Leslie Irene Ryder, A/K/A Leslie Irene Hupp;

12

Lisa Martinez Shiozaki;

Kellen S. Stevens;

13

Dennis M. Sandoval;

De La Housaye & Associates,  A Law

14

Corporation;

Roes 1-10;

15

Individually, Jointly, Jointly and Severally,

    Defendants.

16

17

    Case No.: CV-20-

**PLAINTIFF PAUL HUPP'S
EMERGENCY *EX PARTE* APPLICATION
PURSUANT TO LOCAL RULE 7-19;
POINTS AND AUTHORITIES;
DECLARATION IN SUPPORT**

Time: 9:00 AM
Date: August 19, 2020
Courtroom:
Judge:

18

**I
Introduction**

19

20    To the United States District Court for the Central District of California ("COURT"),

21  Defendants Rebecca Lynn Dugan ("DUGAN"), John Washburne Vineyard  ("VINEYARD")

22  Leslie Irene Ryder, A/K/A Leslie Irene Hupp ("RYDER"); Lisa Martinez Shiozaki

23  ("SHIOZAKI"); Kellen S. Stevens ("STEVENS"); Dennis M. Sandoval ("SANDOVAL"); De

24  La Housaye & Associates, A Law Corporation ("DLHA") and Roes 1-10 ("ROES") (collectively

25  "DEFENDANTS") and all other parties of interest, pursuant to Local Rule 7-19, Plaintiff Paul



# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ARISTEA HUPP, et al.,

                    Plaintiffs,

         v.

SOLERA OAK VALLEY GREENS
ASSOCIATION, et al.,

                  Defendants.

Case No. ED CV 16-370-VAP (SP)

**ORDER DECLARING PLAINTIFFS
PAUL HUPP AND ARISTEA HUPP
TO BE VEXATIOUS LITIGANTS**

## I.

## __INTRODUCTION__

On March 1, 2016, pro se plaintiffs Aristea and Paul Hupp filed a complaint in this case pursuant to 42 U.S.C. § 1983. The 100-page complaint alleges sixty-five claims, including violations of their First and Fourteenth Amendment rights. Among other defendants, the complaint named Solera Oak Valley Greens Association ("Solera"), past and current Solera board members, and Solera residents and employees (collectively, the "Solera defendants"). Solera is a planned, gated community in Beaumont where plaintiff Aristea Hupp owns two properties and where both plaintiffs reside. Aristea Hupp is the mother of Paul Hupp.

1         Plaintiffs alleged that in April 2015, Solera fined Aristea Hupp $200 for walking

2    her dogs without a muzzle in violation of Solera's pit bull muzzle rule, and after

3    plaintiffs indicated their intent to challenge the rule and the fine, Solera shut down

4    plaintiffs' gate remote controls, preventing plaintiffs from entering Solera through any

5    of the resident gates.  Docket no. 1 ("Compl.") at 11-12.  Instead, plaintiffs must enter

6    through the guest gate, which frequently has numerous cars waiting in line with a

7    waiting period that could exceed thirty minutes.  *Id.* at 12.

8         Plaintiffs made identical allegations in an earlier civil rights action filed against

9    various Solera defendants.  *See Paul Hupp, et al. v. Solera Oak Valley Greens Ass'n, et*

10    *al.*, No. ED CV 15-1693-VAP (SP), docket no. 1 at 8-10.  In a third civil rights action,

11    plaintiffs alleged that in August 2013, Solera and one of its employees conspired with

12    Jack Huntsman, an animal control officer for the City of Beaumont, to violate

13    plaintiffs' civil rights.  *See Paul Hupp, et al. v. City of Beaumont, et al.*, No. ED CV

14    14-1303-VAP (SP), docket no. 30 at 5-7, 11-12.  Jack Huntsman was also a named

15    defendant in the instant case, and was again accused of conspiring with the Solera

16    defendants and others to violate plaintiffs' civil rights.

17         In both of the previous actions just noted, all of plaintiffs' federal claims against

18    the Solera defendants, both under § 1983 and otherwise, were dismissed without leave

19    to amend for failure to state a viable claim.  *See Paul Hupp, et al. v. City of Beaumont,*

20    *et al.*, No. ED CV 14-1303-VAP (SP), docket no. 75; *Paul Hupp, et al. v. Solera Oak*

21    *Valley Greens Ass'n, et al.*, No. ED CV 15-1693-VAP (SP), docket no. 19 at 5-8.  This

22    case was no different, with this Court dismissing the entire complaint without leave to

23    amend based on lack of subject matter jurisdiction.  Docket no. 50.  On June 3, 2016,

24    plaintiffs filed a request for reconsideration (docket no. 54) under Rules 52 and 60 of

25    the Federal Rules of Civil Procedure, which the Court denied on August 5, 2016.

26    Docket no. 68.

27         A search of plaintiff Paul Hupp's name in the Public Access to Court Electronic

28    Records (PACER) database reveals that since 2007, he has filed at least 21 lawsuits in

1   the United States District Court for the Central District of California (sometimes with

2   Aristea Hupp), in addition to at least 11 lawsuits in the Southern District of California.

3   *See* Exhibit A.  After reviewing these suits, the Court finds Hupp's litigation history in

4   this district demonstrates an abuse of the judicial process and a waste of judicial

5   resources.  The overwhelming majority of Hupp's cases have been dismissed with

6   prejudice, leading Hupp to frequently re-file dismissed claims with either minimal

7   changes or none at all.  In two of those suits, from 2009 and 2010 respectively, this

8   Court imposed pre-filing screening orders that bar Hupp from filing future suits against

9   any of the defendants in those cases without first obtaining leave of court.  *See Paul*

10  *Hupp v. U.S. Dep't of Educ., et al.*, No. CV 09-2052-PA (AGR), docket no. 28; *Paul*

11  *Hupp v. Vicki Kurpinsky, et al.*, No. ED CV 10-413-UA (RC), docket no. 20.

12      With this litigation history in mind, the Court finds Hupp's most recent filings

13  take a similar pattern against various groups of defendants, including the Solera

14  defendants.  Accordingly, on May 17, 2016, the Court issued an Order to Show Cause

15  ("OSC") (docket no. 51) why the Court should not declare plaintiffs vexatious

16  litigants.  Plaintiffs responded to the OSC ("OSC Response") on July 15, 2016.

17      After careful review and consideration of the OSC Response, and for the reasons

18  outlined below and in the Court's May 17, 2016 OSC, the Court finds it appropriate to

19  declare plaintiffs Paul Hupp and Aristea Hupp vexatious litigants, and require them to

20  obtain leave of Court before filing any new action.

## II.

## DISCUSSION

23      District courts have the inherent power to enter pre-filing orders against

24  vexatious litigants under the All Writs Act.  *See* 28 U.S.C. § 1651(a); *Molski v.*

25  *Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007).  Additionally, Central

26  District of California Local Civil Rule ("Local Rule") 83-8.1 provides: "It is the policy

27  of the Court to discourage vexatious litigation and to provide persons who are

28  subjected to vexatious litigation with security against the costs of defending against

1   such litigation and appropriate orders to control such litigation.  It is the intent of this

2   rule to augment the inherent power of the Court to control vexatious litigation and

3   nothing in this rule shall be construed to limit the Court's inherent power in that

4   regard."

5          Where a litigant has "abused the Court's process and is likely to continue such

6   abuse," the court may (1) "order a party to give security . . . to secure the payment of

7   any costs, sanctions or other amounts which may be awarded against a vexatious

8   litigant"; or (2) "make such other orders as are appropriate to control the conduct of the

9   vexatious litigation."  Local Rules 83-8.2, 83-8.3.  "Such orders may include, without

10  limitation, a directive to the Clerk not to accept further filings from the litigant without

11  payment of normal filing fees and/or without written authorization from a judge of the

12  Court or a Magistrate Judge, issued upon such showing of the evidence supporting the

13  claim as the judge may require."  Local Rule 83-8.2.

14         The Ninth Circuit has cautioned, however, that "such pre-filing orders are an

15  extreme remedy that should rarely be used" because of the danger of "tread[ing] on a

16  litigant's due process right of access to the courts."  *Molski*, 500 F.3d at 1057.

17  Nevertheless, such pre-filing orders are sometimes appropriate because "[f]lagrant

18  abuse of the judicial power . . . enables one person to preempt the use of judicial time

19  that properly could be used to consider the meritorious claims of other litigants."  *De*

20  *Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990).

21         In *De Long*, the Ninth Circuit set forth the requirements for entering pre-filing

22  orders against vexatious litigants: (1) the litigant must be given notice and opportunity

23  to be heard before the order is entered; (2) the court must compile an adequate record

24  for review; (3) the court must make substantive findings that the litigant's filings are

25  frivolous or harassing; and (4) the pre-filing order may not be overly broad, and must

26  be "narrowly tailored to closely fit the specific vice encountered."  *Id.* at 1147-48;

27  *accord Molski*, 500 F.3d at 1057.

28         In its May 17, 2016 OSC, the Court discussed at length the four *De Long* factors

1 and plaintiffs' abuse of the judicial process. OSC at 4-14. The Court repeats much of
2 this analysis here. In addition, to the extent plaintiffs' OSC Response articulates
3 purported bases for the Court to reconsider the findings made in the OSC (as opposed
4 to plaintiffs simply repeating many of the allegations the Court determined were
5 insufficient to assert a federal claim in the underlying complaint in this case), the Court
6 discusses such arguments below.

7 **A.** **Notice and Opportunity to be Heard**

8       On May 17, 2016, the Court issued an OSC: (1) informing plaintiffs the Court
9 was considering a vexatious litigant order; (2) discussing the legal and factual bases for
10 such order; (3) describing the potential restrictions for future filings if plaintiffs were
11 deemed vexatious litigants; (4) identifying the previous actions filed by plaintiffs; and
12 (5) requiring a response from plaintiffs within three weeks of the Court's OSC. After
13 the Court granted plaintiffs two extensions of time, plaintiffs filed their OSC Response
14 on July 15, 2016. *See* docket nos. 55, 64. As such, plaintiffs were provided with
15 adequate notice and an opportunity to be heard in writing. *See Pac. Harbor Capital,*
16 *Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (holding that an
17 opportunity to brief in writing the issue of sanctions to be imposed on an attorney
18 "fully satisfies due process requirements"); *see also Molski*, 500 F.3d at 1058-59
19 (citing *Pac. Harbor* with approval). In their OSC Response, plaintiffs do not contest
20 the notice and opportunity to be heard provided by the Court's May 17, 2016 OSC.

21 **B.** **Compilation of Adequate Record for Review**

22       "An adequate record for review should include a listing of all the cases and
23 motions that led the district court to conclude that a vexatious litigant order was
24 needed." *De Long*, 912 F.2d at 1147. "At the least, the record needs to show, in some
25 manner, that the litigant's activities were numerous or abusive." *Id.* Accordingly, the
26 second *De Long* factor requires only that the court compile a list of actions and filings
27 by the litigant. *See Hurt v. All Sweepstakes Contests*, 2013 WL 144047, at *5, (N.D.
28 Cal. Jan. 11, 2013) (finding the second *De Long* factor satisfied where the court

"compiled a list of all the actions Plaintiff filed"); *see also Ringgold-Lockhart v. Cty. of Los Angeles*, 761 F.3d 1057, 1063-64 (9th Cir. 2014). In *Ringgold-Lockhart*, the Ninth Circuit vacated the district court's pre-filing order on other grounds, but found the district court's record met the second *De Long* factor's requirements in part because the district court "discussed and explained the litigation history leading to its order, and appended a list of twenty-one district court filings, including motions, that it viewed as supporting its order." *Id.* at 1063.

In addition, the Ninth Circuit in *Ringgold-Lockhart* acknowledged that the district court noted the litigant's extensive history of state court litigation in the body of its order, and cited to a California Court of Appeal decision that discussed that history and declared the litigant to be vexatious under California Code of Civil Procedure § 391(b)(3). *Id.* at 1064. The Ninth Circuit held that "[t]ogether, the list of federal cases, allegedly baseless motions, and the district court's reference to the California Court of Appeal's reasoned decision . . . provide an adequate record for this Court to review the merits of the district court's order."). *Id.*

In the OSC, the Court attached the search results of plaintiff Paul Hupp's name in the PACER database, revealing at least 21 actions filed in the Central District of California and 11 actions filed in the Southern District of California (Exhibit A), as well as a more descriptive list of 22 actions filed by plaintiffs – either separately or together – in the Central District of California since 2007, indicating the date filed, case number, case title, and reason for termination of those actions (Exhibit B). These Exhibits A and B are also attached hereto, with Exhibit B updated to reflect a more recent case disposition. The OSC additionally discussed relevant portions of Paul Hupp's and Aristea Hupp's state court litigation, as brought to the Court's attention by various defendants in the instant action, and this litigation history is discussed further below as part of the Court's analysis of the third *De Long* factor. *See* OSC at 8-11. The Court takes judicial notice of the court records from these other proceedings. *See* Fed. R. Evid. 201; *see also Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002)

1 (taking judicial notice of opinion and briefs filed in another proceeding); *U.S. ex rel.*

2 *Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.

3 1992) (courts "may take notice of proceedings in other courts, both within and without

4 the federal judicial system, if those proceedings have a direct relation to matters at

5 issue" (citation omitted)).

6 As discussed in more detail with regard to the third *De Long* factor, plaintiffs'

7 actions are not only numerous, but the large majority of them have been found to be

8 patently without merit and indicate a pattern of harassment against various defendants.

9 *See* OSC at 6-7.  The second *De Long* factor requiring compilation of an adequate

10 record thus has been met.

11 **C.   Substantive Findings of Frivolousness**

12 The Court's substantive findings regarding the nature of plaintiffs' filings "go[]

13 to the heart of the vexatious litigant analysis." *Molski*, 500 F.3d at 1059.  To decide

14 whether a litigant's actions are frivolous or harassing, a court must "look at both the

15 number and content of the filings as indicia of the frivolousness of the litigant's

16 claims." *Stimac v. Weikin*, 785 F. Supp. 2d 847, 854 (N.D. Cal. 2011) (quoting *Molski*,

17 500 F.3d at 1058) (internal quotation marks omitted).  Thus, a pre-filing order requires

18 not only a showing of litigiousness, but also claims that are meritless.  A litigant's

19 claims "must not only be numerous, but also be patently without merit." *Molski*, 500

20 F.3d at 1059 (quoting *Moy v. U.S.*, 906 F.2d 467, 470 (9th Cir. 1990) (internal

21 quotation marks omitted).

22 Here, plaintiffs' previous filings are both numerous and meritless.  *See* Exhibits

23 A-B.  As noted in the Court's OSC, in this district since 2007, plaintiffs have filed 18

24 civil complaints, and Paul Hupp has filed four petitions for writs of habeas corpus

25 under 28 U.S.C. § 2254.  OSC at 6; Exhibit B.  Five of the cases were terminated at the

26 outset when plaintiff's application to proceed in forma pauperis was denied.  Eight

27 civil actions were dismissed either with prejudice or without leave to amend (none of

28 these eight involved settlements).  All four of Paul Hupp's habeas petitions have been

1   denied for lack of jurisdiction. Of plaintiffs' two still pending cases, one has a pending

2   motion to dismiss, and the majority of the second was recently dismissed. On the

3   whole, the Court's review of those cases reveals conclusory statements and factual

4   allegations repeated across multiple complaints, despite the Court granting several

5   opportunities to amend. These complaints often contain generic and broad references

6   to constitutional harms in order to invoke the Court's jurisdiction over plaintiffs'

7   challenges to various California statutes that are also largely unsupported by the facts

8   alleged.

9        The 22 cases filed by plaintiffs in this district is a relatively low number

10   compared to some other cases where litigants were found vexatious. *See De Long*, 912

11   F.2d at 1147 (citing cases involving 35, "over 50," and "over 600" actions). But the

12   number of lawsuits filed by the litigant need not be numerous. *See Boustred v. Gov't*,

13   2008 WL 4287570, at *2 (N.D. Cal. Sept. 17, 2008) (finding "plaintiff has now

14   brought three actions containing similar rambling, largely incomprehensible claims

15   against a multitude of defendants" sufficient in terms of finding an adequate record for

16   review). Moreover, as discussed further below, the 22 cases filed in this district are in

17   addition to those filed by plaintiffs in other courts. In combination, all these cases

18   form a pattern of harassment.

19        The Court recognizes that two of Paul Hupp's individual civil actions filed in

20   this district have been dismissed after the parties reached settlements. *See Paul Hupp*

21   *v. City of Beaumont, et al.*, No. ED CV 11-774-VAP (SP), docket nos. 27-28; *Paul*

22   *Hupp v. Rhonda Wagner Kuehn, et al.*, No. ED CV 14-1223-CAS (PLA), docket nos.

23   27-28.[1] Paul Hupp was also awarded costs and damages as to a cause of action for

24   libel in 2010. *See Paul Hupp v. Keith D. Jones, et al.*, No. CV 08-6927-GW (SS),

25

26   [1]   As plaintiffs point out in their OSC Response, the OSC incorrectly described

27   *Hupp v. Kuehn*, No. ED CV 14-1223, as a civil rights case, when in fact it was a case
    alleging breach of contract, fraud, infliction of emotional distress, and defamation.

28   *Hupp v. City of Beaumont*, No. ED CV 11-774, was a civil rights case.

1   docket no. 68.  The Court also notes that although the majority of one of plaintiffs'

2   cases was recently dismissed, in that case one claim for violation of Paul Hupp's

3   Fourth Amendment rights, brought against Jack Huntsman, an animal control officer

4   for the City of Beaumont, survived a motion to dismiss.  *See Paul Hupp, et al. v. City*

5   *of Beaumont, et al.*, No. ED CV 14-1303-VAP (SP), docket nos. 70 at 18-22, 75.

6        But even if these developments could lead to an inference that at least some of

7   plaintiffs' claims have had merit, thus precluding a finding of frivolousness, the Court

8   finds plaintiffs' filings still satisfy the third *De Long* factor here.  "Frivolous litigation

9   is not limited to cases in which a legal claim is entirely without merit."  *Molski*, 500

10   F.3d at 1060.  In *Molski*, the subject of the vexatious litigant order was a disabled

11   patron who filed almost 400 cases against various restaurants and businesses under

12   Title III of the Americans With Disabilities Act, often successfully obtaining cash

13   settlements.  *Id.*  Nonetheless, the Ninth Circuit upheld the district court's vexatious

14   litigant order, finding the patron's "litigation strategy evidenced an intent to harass

15   businesses," even though his claims for damages "might have been legally justified."

16   *Id.*

17        Indeed, "an alternative to the finding of frivolousness is the finding that [the

18   litigant's] claims show a pattern of harassment."  *De Long*, 912 F.2d at 1148.  Certain

19   of the factors adopted by the Second Circuit in *Safir v. U.S. Lines, Inc.*, 792 F.2d 19

20   (2d Cir. 1986), which the Ninth Circuit has found provide "a helpful framework" for

21   applying the third and fourth *De Long* factors, are instructive here.  *See Molski*, 500

22   F.3d at 1058 (citation omitted).  The five *Safir* factors are:

23        (1) the litigant's history of litigation and in particular whether it entailed

24        vexatious, harassing, or duplicative suits; (2) the litigant's motive in

25        pursuing the litigation, e.g., does the litigant have an objective good faith

26        expectation of prevailing?; (3) whether the litigant is represented by

27        counsel; (4) whether the litigant has caused needless expense to other

28        parties or has posed an unnecessary burden on the courts and their

1      personnel; and (5) whether other sanctions would be adequate to protect

2      the courts and other parties.

3 *Id.* (quoting *Safir*, 792 F.2d at 24).  Applying that framework to the record before it,

4 the Court concludes the third *De Long* factor is satisfied in light of Paul Hupp's

5 particular pattern of vexatiousness and willful disregard for court rulings.

6      **1.**     **Paul Hupp's History as a Vexatious Litigant**

7       Most relevant here is the first *Safir* factor.  In the instant action, various

8 defendants provided the Court with a sampling drawn from Paul Hupp's history of

9 state court litigation that creates a record similar to that in *Ringgold-Lockhart*, where

10 the litigant had also developed an extensive and harassing history of litigation in state

11 court.  *See Ringgold-Lockhart*, 761 F.3d at 1064.  On March 25, 2016, various Solera

12 defendants filed a motion to dismiss plaintiffs' complaint.  Docket no. 37.  In support

13 of the motion, those defendants also filed a request for judicial notice.  Docket no. 37-

14 1.  Those defendants asked the Court to take judicial notice of a January 8, 2014 order

15 by the Riverside County Superior Court, in case number RIC 1216945, declaring Paul

16 Hupp a vexatious litigant in that court.  Docket no. 37-1 at 2; *see* docket no. 37-2, Ex.

17 C. Defendants also asked the Court to take judicial notice of the California Court of

18 Appeal's March 7, 2014 decision, in case number E060463, denying Paul Hupp's

19 appeal of that vexatious litigant order.  Docket no. 37-1 at 2; *see* docket no. 37-2,

20 Ex. D.

21       On March 24, 2016, one day before the Solera defendants filed their motion to

22 dismiss, a group of non-Solera defendants also filed a motion to dismiss plaintiffs'

23 complaint, accompanied by their own request for judicial notice.  Docket nos. 29, 30.

24 Those defendants also asked the Court to take judicial notice of the Riverside County

25 Superior Court order declaring Paul Hupp a vexatious litigant.  Docket no. 30 at 3,

26 Ex. 3.  In addition, defendants sought judicial notice of the following documents,

27 among others: (1) a first amended complaint filed by plaintiff Aristea Hupp on January

28 12, 2016 in Riverside County Superior Court, *Aristea Hupp v. Solera Oak Valley*

1   *Greens Ass'n, et al.*, case number RIC 1512779 (docket no. 30 at 4, Ex. 9) ("the state

2   court action"); (2) a notice of vexatious litigant order filed in the state court action on

3   January 26, 2016 (docket no. 30 at 4, Ex. 10); (3) a February 10, 2016 Riverside

4   County Superior Court minute order granting an ex parte application for dismissal of

5   the first amended complaint in the state court action (docket no. 30 at 4, Ex. 13); and

6   (4) a March 9, 2016 Riverside County Superior Court notice of entry of judgment

7   dismissing the state court action (docket no. 30 at 4, Ex. 15).  The Court takes judicial

8   notice of the court records from these state court proceedings, as stated above in the

9   discussion of the second *De Long* factor.  *See* Fed. R. Evid. 201; *see also Holder*, 305

10   F.3d at 866; *U. S. ex rel. Robinson Rancheria Citizens Council*, 971 F.2d at 248.

11       Regarding these judicially noticed filings from Aristea Hupp's underlying state

12   court action, the Court notes the January 26, 2016 notice of vexatious litigant order

13   alleges – and the first amended complaint in that case shows – that Paul Hupp removed

14   his name from the caption in the January 12, 2016 first amended complaint, but

15   nonetheless listed himself as a party on the second page of that complaint.  Docket no.

16   30, Exs. 9, 10.  That first amended complaint proceeds to include numerous factual

17   allegations concerning Paul Hupp in addition to Aristea Hupp.  *Id.*  Accordingly, the

18   Riverside County Superior Court granted an ex parte application to dismiss the first

19   amended complaint, under the vexatious litigant rule.  *See* docket no. 30-2, Ex. 13.

20   Although the Superior Court had declared only Paul Hupp to be a vexatious litigant,

21   and although Aristea Hupp was the only named plaintiff in the dismissed case, it was

22   apparent Paul Hupp was attempting to evade his status as a vexatious litigant.

23       The Court also takes judicial notice of the 11 lawsuits Paul Hupp has filed in the

24   Southern District of California, and in particular *Paul Hupp v. San Diego Cty. Dist.*

25   *Att'y, et al.*, No. 3:12-CV-492-IEG (RBB) (S.D. Cal.).  *See* Exhibit A.  There, the

26   United States District Court for the Southern District of California took judicial notice

27   of the following facts: (1) on November 15, 2010, the San Diego Superior Court

28   entered a three-year restraining order against Hupp ordering him not to contact or

harass an administrative law judge; and (2) on November 16, 2011, Hupp was found guilty of violating the restraining order and sentenced to 25 days in custody and a $5,000 fine. *Paul Hupp v. San Diego Cty. Dist. Att'y, et al.*, No. 3:12-CV-492-IEG (RBB) (S.D. Cal.), docket no. 35 at 2-3; *id.*, docket no. 26-2, Exs. D-E; *id.*, docket no. 24-3, Ex. B.

Moreover, as mentioned above, this Court has already imposed two pre-filing screening orders on Paul Hupp, in 2009 and again in 2010. *See Paul Hupp v. U.S. Dep't of Educ., et al.*, No. CV 09-2052-PA (AGR), docket no. 28; *Paul Hupp v. Vicki Kurpinsky, et al.*, No. ED CV 10-413-UA (RC), docket no. 20.

In total, Paul Hupp has been declared a vexatious litigant once in Riverside County Superior Court and twice in the Central District of California, and has been subjected to a restraining order in the San Diego County Superior Court. This Court is most troubled by the steps Hupp has taken to evade or even disregard those orders. As noted, in 2011, Hupp was sentenced to 25 days in custody for violating the San Diego Superior Court restraining order. And as also noted, it was as recently as January 2016 that Hupp attempted to evade his status as a vexatious litigant in Riverside County Superior Court by filing a complaint that only listed his mother in the party caption, despite referencing himself as a party elsewhere in the complaint and including factual allegations that concerned him.

Moreover, since Paul Hupp was declared a vexatious litigant in Riverside Superior Court in January 2014, Paul Hupp and sometimes Aristea Hupp have turned to this federal Court to file what appear to be state court matters. For example, both plaintiffs sued the Solera defendants for largely state court violations in case number ED CV 15-1693, including only two federal claims that, as the court noted, appeared to be asserted "solely for the purpose of obtaining [federal] jurisdiction, given the obvious infirmities of those claims." *See Paul Hupp, et al. v. Solera Oak Valley Greens Ass'n*, No. ED CV 15-1693-VAP (SP), docket no. 5 at 8. The Court ultimately dismissed the case for inability to state a federal claim, since neither plaintiffs' civil

rights claim under 42 U.S.C. § 1983 nor their Fair Debt Collection Practices Act claim under 15 U.S.C. §§ 1692, et seq. could succeed given that none of the defendants were state actors or debt collectors.  Plaintiffs then sued the Solera defendants and others in the instant case, raising many of the same claims and many others, but again – as in case number ED CV 15-1693 – raising only defective federal claims that appeared to serve no purpose other than to try to manufacture a basis for federal jurisdiction.

Plaintiffs have also, unsuccessfully, tried to use this Court to challenge the decisions and courtroom procedures of Superior Court judges in small claims and infraction cases.  Plaintiffs each separately brought civil rights actions against Superior Court judges that were dismissed due to judicial immunity and similar deficiencies. *See Aristea Hupp v. Samuel Diaz, Jr., et al.*, No. ED CV 14-2559-VAP (SP); *Paul Hupp v. Mark Edward Petersen, et al.*, No. ED CV 15-1247-VAP (SP).  And Paul Hupp's four habeas petitions sought to challenge his Superior Court convictions for speeding and having dogs at large, although he was never in custody as required for habeas jurisdiction.  *See Paul Hupp v. Riverside Cty. Super. Ct., et al.*, Nos. ED CV 15-1266-VAP (SP), ED CV 15-1268-VAP (SP), ED CV 15-1879-VAP (SP), ED CV 15-2485-VAP (SP).  Thus, as Paul Hupp's history of vexatious litigation in state court ultimately led the Riverside County Superior Court to block his access to that court, he has increasingly turned to this Court to both challenge the Superior Court and raise matters that have no place in federal court.

Accordingly, the Court finds Paul Hupp's history of litigation has been vexatious, harassing, and duplicative under the first *Safir* factor.  *See Safir*, 792 F.2d at 24.

### 2.      The Four Remaining *Safir* Factors

While the Court believes Paul Hupp's litigation history most supports a finding of frivolous or harassing litigation for purposes of the *De Long* analysis, the remaining four factors under *Safir* are also relevant here.  Regarding the second *Safir* factor of whether the litigant has an objective and good faith expectation of prevailing, the

1    Court finds the volume and repetitive nature of plaintiffs' filings – many of which, as

2    discussed, had no legitimate basis for federal jurisdiction – demonstrate a motive to

3    harass both the various defendants named in their actions, as well as the Court.

4         Plaintiffs are not represented by counsel for purposes of the third *Safir* factor.

5    The Ninth Circuit has recognized that pre-filing orders to curb access to courts should

6    be done with care where a pro se litigant is involved, yet also recognizes that courts are

7    free to enjoin litigants with "abusive and lengthy histories," as is the case here. *See De*

8    *Long*, 912 F.2d at 1147. Moreover, the Court has noted previously that Paul Hupp,

9    although not a practicing attorney, is a law school graduate. *See Paul Hupp v. City of*

10   *Walnut Creek*, 389 F. Supp. 2d 1229, 1232 n.5 (N.D. Cal. 2005); *see also Paul Hupp v.*

11   *Terrance R. Hubbs, et al.*, No. ED CV 14-2560-VAP (SP), docket no. 66 at 5. Thus,

12   the Court has questioned whether Paul Hupp is entitled to the leniency afforded to

13   those unskilled in the law for purposes of the pleading requirements of Federal Rule of

14   Civil Procedure 8(a)(2). *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987)

15   (discussing liberal construction given to "inartful pleading" of pro se litigants, who are

16   "[p]resumably unskilled in the law") (citations omitted). The Court recognizes,

17   however, that Aristea Hupp is not an attorney or law school graduate.

18        The fourth *Safir* factor speaks directly to the factual scenario currently before

19   the Court here: though relatively low in number, plaintiffs' filings in this district have

20   imposed substantial costs upon the various defendants – many of whom are public

21   entities – and the Court, both in terms of time and money. *See Steinhart v. Barkela*,

22   2013 WL 3814330, at *3 (N.D. Cal. July 19, 2013) (considering the fact that one of the

23   defendants subjected to vexatious litigation was a public entity when analyzing

24   substantive findings of frivolousness or harassment under *De Long*). And as for the

25   fifth factor, in light of Paul Hupp's demonstrated evasion of previous vexatious litigant

26   and restraining orders – including apparently using his mother as a plaintiff to raise his

27   own grievances – the Court doubts whether sanctions other than a vexatious litigant

28   order against both plaintiffs "would be adequate to protect the courts and other parties"

1   under the fifth *Safir* factor.  *See Safir*, 792 F.2d at 24.

2        On the basis of this record, then, the Court concludes plaintiffs have "abused the

3   court's process and [are] likely to continue such abuse, unless protective measures are

4   taken."  Local Rule 83-8.3.  Accordingly, plaintiffs' filings in this district satisfy the

5   third *De Long* factor.

6   **D.    Plaintiffs' Objections to the Record**

7        Most of plaintiffs' objections in the OSC Response can be characterized as

8   objections to the Court's compilation of a record for review, for purposes of the second

9   *De Long* factor, and to the Court's substantive findings of frivolousness under the third

10  *De Long* factor.  In particular, plaintiffs contend the Court erred by: (1) including Paul

11  Hupp's habeas corpus petitions within its record for review (OSC Response at 3, 6, 9,

12  14, 18); (2) including within its record for review cases that are currently on appeal,

13  because they are not final rulings on the merits (*id.* at 4, 6, 14, 16, 18); (3) both

14  including within its record for review, and using as a basis for findings of

15  frivolousness, any proceedings that were already the subject of a request for judicial

16  notice in a Paul Hupp lawsuit from the Southern District of California (*id.* at 4, 5, 15-

17  16); and (4) improperly taking judicial notice of both state and federal court

18  proceedings (*id.* at 9-11, 16).  The Court will address each of these contentions below.

19       **1.    Habeas Corpus Petitions**

20       In the OSC Response, plaintiffs argue the Court's record for review contains

21  legal and factual errors, for purposes of the second *De Long* factor and as outlined in

22  Exhibits A and B to the OSC, because the habeas corpus petitions included therein "are

23  not 'lawsuits.'" OSC Response at 3.  Plaintiffs argue "having a *Habeas Corpus*

24  *Petition* denied is not a factor that can support a 'vexatious litigant' finding." *Id.* at 18.

25       Though plaintiffs' arguments are unsupported by any statutory authority or case

26  law, the Court notes the vexatious litigant requirements under California law prevent

27  courts from considering habeas corpus petitions when developing a litigation history to

28  support a finding of vexatiousness.  *In re Bittaker*, 55 Cal. App. 4th 1004, 1012, 64

Cal. Rptr. 2d 679 (1997) ("A petition for writ of habeas corpus is not a civil action or proceeding within the meaning of the vexatious litigant statute."); *see* Cal. Code Civ. Proc. §§ 391(b)(1)-(4).  But this Court does not derive its authority to declare plaintiffs vexatious litigants from California law, but rather from the "inherent power to enter pre-filing orders against vexatious litigants" under the All Writs Act. *See Molski*, 500 F.3d at 1057 (citing 28 U.S.C. § 1651(a)).  In determining whether plaintiffs qualify as vexatious litigants, the Local Rules authorize, but do not require, this Court to look to California's vexatious litigant statute for guidance.  Indeed, Local Rule 83-8.4 states: "Although nothing in this rule shall be construed to require that such a procedure be followed, the Court may, at its discretion, proceed by reference to the Vexatious Litigants statute of the State of California, Cal. Code Civ. Proc. §§ 391-391.8."

The Court's May 17, 2016 OSC made clear that the Court's determination that plaintiffs should be deemed vexatious litigants was not made under the California vexatious litigant statute, but rather its inherent authority under the All Writs Act and an analysis of the *De Long* factors as required by relevant Ninth Circuit precedent. OSC at 3-4.  Plaintiffs appear to recognize the Court's stated source of authority elsewhere in their OSC Response, where they discuss the different standards for a finding of vexatiousness between California and federal courts, and even state "federal law is diametrically opposite of state law" and the relevant California vexatious litigant statutes.  OSC Response at 8.

Moreover, federal courts in this and other districts in California have declared litigants vexatious based in whole or in part on a litigation history involving habeas corpus petitions. *See Gray v. People of California*, 2014 WL 1325312, at *5 (C.D. Cal. 2014); *Olagues v. Marin Dist. Att'y*, 2014 WL 3704918, at *6 (N.D. Cal. July 23, 2014); *Galeska v. Duncan*, 894 F. Supp. 1375, 1381 (C.D. Cal. 1995) (citing *O'Loughlin v. Doe*, 920 F.2d 614, 618 (9th Cir. 1990)).  Plaintiffs provide no authority to the contrary.  As such, it is not error for the Court to include Paul Hupp's several habeas corpus petitions within its record for review for purposes of the second *De*

*Long* factor.  And it is particularly appropriate that the habeas petitions be considered in this case since, as discussed above, they are part of plaintiffs' increasing practice of improperly seeking to use this Court to challenge decisions adverse to them in the Superior Court.

### 2.    Cases Currently on Appeal

In their OSC Response, plaintiffs also contend the Court erred by including within its record for review any cases plaintiffs have subsequently appealed to the Ninth Circuit, appearing to argue these cases are not final rulings on their merits and therefore improperly included within the scope of the OSC.  *See* OSC Response at 4, 6, 14, 16, 18.  But other district courts within the Ninth Circuit have declared litigants vexatious based on a litigation history that contained cases still on appeal.  *Rygg v. Hulbert*, 2014 WL 5023627, at *1-2, 5 (W.D. Wash. 2014); *Scott v. Weinberg*, 2007 WL 963990, at *2 (W.D. Wash. 2007).  Courts have made similar rulings while cases within its record for review are pending before a district court.  *Ingram v. City of Sacramento*, 2013 WL 1403055, at *2 n.3 (E.D. Cal. 2013); *Walker v. Stanton*, 2008 WL 4401388, at *8, 10 n.5 (C.D. Cal. 2008).  Plaintiffs provide no support for the contention that cases pending on appeal before the Ninth Circuit cannot form the basis for a finding of vexatiousness.

Plaintiffs also appear to argue the Court cannot base its finding of vexatiousness on cases that involved claims over which the Court declined to exercise supplemental jurisdiction, because there has not yet been a final ruling on the merits of those claims.  *See* OSC Response at 4, 18.  "Final judgment on the merits is synonymous with dismissal with prejudice."  *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005) (internal quotations and citations omitted).  As stated in the OSC, at least eight of Paul Hupp's civil actions were dismissed either with prejudice or without leave to amend.  OSC at 6; *see* OSC, Ex. B.

Courts have based a finding of vexatiousness on a litigation history comprised in part of cases dismissed with prejudice or without leave to amend, including dismissals

1   for lack of subject matter jurisdiction where the court plainly determines a plaintiff's

2   case lacks substantive merit.  For example, in *Martin v. Redwood City Dental Care*,

3   2015 WL 94898982 (N.D. Cal. 2015), the court declared the plaintiff a vexatious

4   litigant based on a record for review containing nine complaints dismissed for naming

5   defendants immune from suit, for failing to state a claim, or for lack of jurisdiction.  *Id.*

6   at *2.  Included within that litigation history was a complaint dismissed with prejudice

7   for failing to state a cognizable claim under § 1983, as the allegations were brought

8   against a corporation defendant and involved "purely private conduct."  *Id.* at *3.

9   Above and in the OSC, the Court has explained how plaintiffs' claims against the

10  Solera defendants have failed on multiple occasions for the same reasons, in part

11  because plaintiffs failed to adequately allege state action against those defendants.

12  *See* OSC at 10.

13      Moreover, to the extent plaintiffs allege the Court cannot base a finding of

14  vexatiousness on cases that may later be decided in plaintiffs' favor, the Court

15  reiterates that the focus under federal law is on the number of suits that were frivolous

16  or harassing in nature, rather than on the number of suits that were simply adversely

17  decided.  *Molski*, 500 F.3d at 1061; *De Long*, 912 F.2d at 1147-48.  Above and in the

18  OSC, the Court has detailed the wide range of Paul Hupp's frivolous and harassing

19  actions, both with and without the involvement of Aristea Hupp, including certain

20  cases that settled favorably to Paul Hupp or partially survived a motion to dismiss.

21  *See* OSC at 6-11.  Plaintiffs' arguments fail to show the Court erred when it considered

22  portions of Paul Hupp's litigation history that are still pending resolution in this Court,

23  on appeal to the Ninth Circuit, or were dismissed without prejudice.

24      **3.    Cases Included Within a Previous Request for Judicial Notice**

25      In the OSC Response, plaintiffs also claim the Court erred by considering any

26  proceedings that were already the subject of a request for judicial notice in Paul

27  Hupp's lawsuit from the Southern District of California, *Paul Hupp v. San Diego Cty.*

28  *Dist. Att'y, et al.*, No. 3:12-CV-492-IEG (RBB) (S.D. Cal. 2012) (the "Southern

District case"), in its analysis of the second and third *De Long* factors. OSC Response at 4, 5, 15-16. Plaintiffs claim this Court is currently "bringing as an OSC" the "exact same 'vexatious litigant' motion" filed in April 2012 against Paul Hupp in the Southern District case. *Id.* at 4. According to plaintiffs, because the court in the Southern District case refused to find Hupp was a vexatious litigant, this Court is barred by issue and claim preclusion from "re-litigating" those cases cited in the April 2012 motion. *Id.* at 5.

In its OSC and above, the Court took judicial notice of the 11 lawsuits Paul Hupp has filed in the Southern District of California, including the Southern District case to which plaintiffs refer in their OSC Response. In the OSC Response, plaintiffs cite to a motion to dismiss Paul Hupp's first amended complaint in the Southern District case, accompanied by a corresponding request for judicial notice, filed by the defendants in that case. OSC Response at 4; Southern District case, docket no. 24. The defendants requested the court take judicial notice of several exhibits, including the two orders from the Central District of California declaring Paul Hupp a vexatious litigant. Southern District case, docket no. 24-2 at 3; *see Paul Hupp v. U.S. Dep't of Educ., et al.*, No. CV 09-2052-PA (AGR), docket no. 28; *Paul Hupp v. Vicki Kurpinsky, et al.*, No. ED CV 10-413-UA (RC), docket no. 20.

On June 4, 2012, the court in the Southern District case issued an order granting the motion to dismiss, which plaintiffs also cite in the OSC Response. Southern District case, docket no. 35; *see* OSC Response at 4. In a footnote in that order, the court took judicial notice of the requested documents, including the two Central District orders. Southern District case, docket no. 35 at 2 n.1. In doing so, the court noted the documents were appropriate for judicial notice because they were matters of public record, but clarified that the court was taking judicial notice only of the existence of these documents and the statements made therein, not the truth of their contents. *Id.*

As far as this Court can tell, plaintiffs argue this footnoted statement from the

Case 5:16-cv-00370-VAP-SP   Document 92   Filed 10/21/20   Page 100 of 106   Page ID
#:2811
Case 5:16-cv-00370-VAP-SP   Document 73   Filed 08/16/16   Page 20 of 26   Page ID #:2482

court in the Southern District case demonstrates the court "denied making a finding of fact that [Paul Hupp was] a 'vexatious litigant.'"  OSC Response at 5.  Thus, plaintiffs claim it is now "settled law" that none of the cases cited by the Court in its OSC prior to June 4, 2012 can be used to support a finding of vexatiousness under the doctrines of issue and claim preclusion.  *Id.*  This misconstrues the record of what occurred in the Southern District case.

This Court need not address whether a court's denial of a motion to declare a litigant vexatious would have any preclusive effect in a later vexatious litigant motion, because plaintiffs are simply incorrect that there was any such denial or finding in the Southern District case.  In fact, no motion was brought in the Southern District case to declare Paul Hupp a vexatious litigant.  Plaintiffs wrongly construe the Southern District case defendants' request for judicial notice of prior vexatious litigant orders entered against Paul Hupp as a formal motion to declare Hupp a vexatious litigant in that case.  The court in the Southern District case took judicial notice of the requested documents, all of which were documents from either state or federal court, to assist in the court's resolution of the pending motions to dismiss.  Southern District case, docket no. 24-2; *see id.*, docket no. 35 at 5-14.  The court there also found the documents properly subject to judicial notice for the purpose of presenting the procedural history of that matter.  *Id.*, docket no. 35 at 2-4.

But by taking judicial notice of certain documents, the court in the Southern District case neither found, nor refused to find, that Paul Hupp was a vexatious litigant.  Nowhere in the June 4, 2012 order granting the motion to dismiss does the court in the Southern District case make any ruling on Paul Hupp's status as a vexatious litigant.  Nor could any such finding be implied or intended from statements in which the court there provided citations to case law detailing the appropriate scope for taking judicial notice of certain documents.  *Id.*, docket no. 35 at 2 n.1; *see* OSC Response at 4.  Thus, plaintiffs' objection that the Court is foreclosed from using a portion of Paul Hupp's litigation history, for purposes of the second and third *De Long* factors, is without

1 │ merit.

2 │     **4.**    **<u>Improper Judicial Notice</u>**

3 │       In their OSC Response, plaintiffs further contend the Court improperly took

4 │ judicial notice in its OSC of certain Riverside County Superior Court records related to

5 │ the allegations of plaintiffs' underlying complaint.  OSC Response at 9-11, 16-17.

6 │ They claim the Court erred by judicially noticing "papers that cannot receive 'judicial

7 │ notice' without an opportunity to be heard on their validity and reliability." *Id.* at 10.

8 │ Plaintiffs also argue they have had no "opportunity whatsoever to address any paper by

9 │ any defendant that has been filed in this action," and that the OSC improperly cites to

10 │ "unidentified and unknown papers from the various defendants without giving

11 │ Plaintiffs the opportunity to object to them." *Id.* at 9, 10-11.

12 │       The OSC Response is in fact plaintiffs' fourth time addressing various

13 │ allegations arising from this underlying state court action.  In their complaint, plaintiffs

14 │ initially brought various facial and as-applied challenges to Paul Hupp's status as a

15 │ vexatious litigant in state court, which the Court addressed in its March 28, 2016 order

16 │ denying plaintiffs' motion for a temporary restraining order and preliminary

17 │ injunction, and ordering plaintiffs to show cause why the complaint should not be

18 │ dismissed for lack of subject matter jurisdiction. *See* Compl. at 93-99; docket no. 40 at

19 │ 13-14.

20 │       Plaintiffs continued to assert these allegations in their April 27, 2016 response to

21 │ that order, which the Court again addressed in its May 13, 2016 order dismissing the

22 │ complaint without leave to amend. *See* docket no. 48 at 3; docket no. 49 at 6-9.

23 │ Plaintiffs next filed a  request for reconsideration under Rules 52 and 60 of the Federal

24 │ Rules of Civil Procedure, where they again raised their constitutional challenges to the

25 │ California "vexatious litigant" statute and various proceedings in underlying state court

26 │ actions.  Docket no. 54 at 3-5.  On all occasions, the Court considered and rejected

27 │ these arguments, and found plaintiffs failed to state viable claims under 42 U.S.C. §

28 │ 1983 that this Court has jurisdiction to consider.

Case 5:16-cv-00370-VAP-SP   Document 92   Filed 10/21/20   Page 102 of 106   Page ID
#:2813
Case 5:16-cv-00370-VAP-SP   Document 73   Filed 08/16/16   Page 22 of 26   Page ID #:2484

To the extent plaintiffs argue they are entitled to a hearing before this Court to address various factual and legal errors present in these underlying state court proceedings, plaintiffs' objection to judicial notice of certain records from the Riverside County Superior Court is not well-taken on its merits.  Despite plaintiffs' continued challenge to these state court proceedings, plaintiffs offer only conclusory claims and have presented no new law or facts that could not have been previously known by plaintiffs, nor have plaintiffs shown the Court committed legal error or failed to consider any facts previously presented.

Thus, plaintiffs' arguments in the OSC Response do not alter the Court's conclusion that the record for review as set forth in the OSC and herein, and the findings of frivolousness contained therein, are sufficient to satisfy the second and third *De Long* factors.

## E.   Pre-Filing Order

Pre-filing orders "must be narrowly tailored to the vexatious litigant's wrongful behavior." *Molski*, 500 F.3d at 1061.   In *De Long*, for example, the Ninth Circuit held that requiring a vexatious litigant to obtain leave of court to file any action was overbroad, where the litigant's misconduct had involved filing three habeas petitions and a Rule 60(b) motion. *De Long*, 912 F.2d at 1146, 1148.  Similarly, in *Moy v. U.S.*, 906 F.2d 467 (9th Cir. 1990), the Ninth Circuit found overbroad an order that all suits brought by the vexatious litigant be subject to pre-filing review, even though the conduct leading to the order had concerned only one group of defendants. *Moy*, 906 F.2d at 469. The court noted "[t]here is no evidence on this record that [the litigant] has a general history of litigious filing." *Id.* at 471.

On the other hand, the Ninth Circuit has approved broader pre-filing orders against litigants who have a history of filing a wide variety of frivolous actions.  In *Franklin v. Murphy*, 745 F.2d 1221 (9th Cir. 1984), the litigant was a prisoner who had filed over 20 actions against various defendants. *Franklin*, 745 F.2d at 1229.  The district court entered an order limiting the plaintiff to six actions filed in forma

Case 5:16-cv-00370-VAP-SP   Document 92   Filed 10/21/20   Page 103 of 106   Page ID
#:2814
Case 5:16-cv-00370-VAP-SP   Document 73   Filed 08/16/16   Page 23 of 26   Page ID #:2485

pauperis per year. *Id.* at 1232. The Ninth Circuit affirmed this order, with the added qualification that the litigant could file additional actions in forma pauperis if he first sought leave of court. *Id.*

Here, the wide range of actions plaintiffs have filed in this district and elsewhere, in addition to Paul Hupp's demonstrated disregard for previous court orders aimed at restraining his harassing conduct, makes it impracticable to tailor a pre-filing order to a specific group of defendants or type of legal claim. In their OSC Response, plaintiffs take issue with the breadth of the OSC's proposed pre-filing order. They argue the two previous vexatious litigant orders entered against plaintiff Paul Hupp in the Central District of California are appropriately "narrowly tailored," while the scope of the pre-filing order here instead relies on cases "so far removed from the OSC that one can easily presume [the OSC] is just pretext to stop [Paul Hupp] from filing actions" against the "friends" and "people who are politically connected to both" the Magistrate Judge and District Judge in this case. OSC Response at 3. In addition to being both nonsensical and unsupported, this statement fails to address the ultimate ineffectiveness of the previous vexatious litigant orders against Paul Hupp in this district. Both of the previous pre-filing orders by this Court restricted Paul Hupp's filings against specific groups of defendants, only for him to continue a similar pattern of litigation against other groups of defendants, as outlined in Exhibit B. *See Paul Hupp v. U.S. Dep't of Educ., et al.*, No. CV 09-2052-PA (AGR), docket no. 28; *Paul Hupp v. Vicki Kurpinsky, et al.*, No. ED CV 10-413-UA (RC), docket no. 20; *see also* Exhibit B.

The Court doubts Paul Hupp would cease to exploit any avenue for frivolous litigation left open to him if he was subjected to a third vexatious litigant order in this district with a similar scope. Under the circumstances, an order requiring plaintiffs to obtain leave of court before filing any future complaint, petition, or in forma pauperis application is an appropriate and reasonably tailored course of action. *See Gray*, 2014 WL 1325312, at *7; *see also Hurt*, 2013 WL 144047, at *8.

23

The Court also finds it appropriate that this pre-filing order include Aristea Hupp, given Paul Hupp's willingness to use his mother's name as a means of evading his own status as a vexatious litigant in other courts in order to continue filing actions there. *See Gavin v. City & Cty. of San Francisco*, 2016 WL 126937, at *1-2 (N.D. Cal. Jan. 12, 2016) (including suits filed by the litigant "and/or her son" in the record for review under the second *De Long* factor). In *Ringgold-Lockhart*, the Ninth Circuit vacated a vexatious litigant order entered against an attorney and her son in part because the district court "erred by holding [the attorney's] state litigation against [her son], without a record indicating that he participated in that litigation." *Id.* The record here is otherwise.

Here, the Court has judicially noticed a portion of Paul Hupp's state court litigation history that shows at least some participation from Aristea Hupp in furtherance of Paul Hupp's attempt to continue filing actions in Riverside County Superior Court despite his status as a vexatious litigant there. In the February 10, 2016 Riverside County Superior Court minute order granting an ex parte application for dismissal of the first amended complaint in the Hupps' most recent state court action, the Superior Court judge notes Aristea Hupp left a voicemail stating her objection to the ex parte application. *See* docket no. 30 at 4, Ex. 13. She is also a plaintiff in four of the actions brought in this Court, as listed on Exhibit B. Though the extent of Aristea Hupp's documented involvement in Paul Hupp's litigation history is small beyond the repeated appearance of her name as a party to various actions, Paul Hupp has nonetheless already attempted to use his mother as an avenue of continued litigation despite an order declaring him a vexatious litigant. Thus, the Court is concerned Paul Hupp would engage in similar tactics here should Aristea Hupp remain outside the scope of such an order.

Plaintiffs argue including Aristea Hupp in the order constitutes a "mind boggling abuse of power." OSC Response at 19. But in the OSC Response, plaintiffs acknowledge Paul Hupp sought "to be a co-plaintiff with [Aristea Hupp] in the state

Case 5:16-cv-00370-VAP-SP   Document 92   Filed 10/21/20   Page 105 of 106   Page ID
#:2816
Case 5:16-cv-00370-VAP-SP   Document 73   Filed 08/16/16   Page 25 of 26   Page ID #:2487

1  court action that is the subject of this federal action," but appear to argue Paul Hupp

2  was not dismissed from that state court action pursuant to the order in that court

3  declaring him a vexatious litigant, but rather because the state court judge "simply

4  refused to allow [Paul Hupp] to be a litigant," in violation of his constitutional rights.

5  *Id.* at 10.  As stated above, the Court has considered and discussed plaintiffs'

6  constitutional challenges to various underlying state court proceedings on several

7  occasions.  In the OSC Response, plaintiffs do not address Aristea Hupp's

8  participation in this case, nor do they address Paul Hupp's deliberate attempt to use

9  Aristea Hupp as a way to continue his litigation in state court despite his status as a

10  vexatious litigant there, other than to again assert many of those constitutional

11  challenges already addressed by the Court.  *See* OSC Response at 5, 7-8, 19.  Thus, the

12  OSC Response has not allayed the Court's concern that excluding Aristea Hupp from

13  the pre-filing order would render it ineffective.

14  　　Here, as Paul Hupp's litigation history shows, he is more than merely a prolific

15  litigant; rather, he has demonstrated a pattern of filing harassing and frivolous lawsuits

16  against a variety of defendants.  The Court concludes Paul Hupp has abused the

17  Court's process, both with and without the use of Aristea Hupp, and is likely to

18  continue abusing the system unless protective measures are taken against both him and

19  Aristea Hupp.  Thus, an order preventing plaintiffs from filing any future pro se

20  complaints or petitions against any defendants, without Court permission, is

21  appropriate in this situation.  *See De Long*, 912 F.2d at 1147; *Hurt v. All Sweepstakes*

22  *Contests*, 2013 WL 144047, at *8 (N.D. Cal. 2013) (declaring the plaintiff a vexatious

23  litigant and subjecting all future lawsuits to a pre-filing restriction).

24

25

26

27

28

## III.

## CONCLUSION

IT IS THEREFORE ORDERED that plaintiffs Paul Hupp and Aristea Hupp are hereby declared vexatious litigants.  The Clerk of the Court shall no longer accept for filing any further motions and/or requests for relief in this action, or any pro se complaint or petition or other case-initiating document from either plaintiff, unless the filing plaintiff(s) have filed a Motion for Leave to File and a Judge or Magistrate Judge of this Court has granted leave for plaintiff(s) to file the document.


DATED:   August 16   , 2016

HONORABLE VIRGINIA A. PHILLIPS
UNITED STATES DISTRICT JUDGE

Presented by:

Sheri Pym
United States Magistrate Judge

26